## 39674. LOCAL DIVISION 732, AMALGAMATED TRANSIT UNION et al. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

(320 SE2d 742)

Marshall, Presiding Justice.

The United States Supreme Court has granted certiorari in *Local Division 732, Amalgamated Transit Union v. MARTA,* 251 Ga. 15 (303 SE2d 1) (1983) (referred to hereinafter as *Union v. MARTA*). Our judgment has been vacated, and the case has been remanded to us for reconsideration in light of the Supreme Court's subsequent decision in Southland Corp. v. Keating, 465 U. S. ___ (104 SC 852, 79 LE2d 1) (1984).

1. In Div. 1 of *Union v. MARTA,* we addressed the question of whether the revocability of MARTA's consent to arbitrate additions to its 1977 collective-bargaining agreement with the union is governed by state law or federal law, i.e., the Federal Arbitration Act (FAA).

As noted in *Union v. MARTA,* the collective-bargaining agreement was to continue in force from year to year unless, within certain specified time limits, either party notified the other of its decision to terminate the agreement or to negotiate modifications or additions thereto.

As further noted in *Union v. MARTA,* MARTA entered into an agreement with the union to submit to arbitration " 'any labor dispute or controversy regarding the application, interpretation, or enforcement of any of the provisions' " of the collective-bargaining agreement. 251 Ga., supra at p. 17. This arbitration clause was part of

a labor-protective arrangement entered into between MARTA and the union under the auspices of § 13 (c) of the Urban Mass Transportation Act (UMTA). It is, therefore, referred to as a § 13 (c) agreement.

In 1981, MARTA notified the union of its desire to negotiate a new collective-bargaining agreement. After negotiations broke down, the union invoked the arbitration clause.

In *Union v. MARTA,* we concluded that in Local Div. 732, Amalgamated Transit Union v. MARTA, 667 F2d 1327 (11th Cir. 1982), and Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, 457 U. S. 15 (102 SC 2202, 72 LE2d 639) (1982), it has been held that Congress intended § 13 (c) agreements to be governed by state law to be applied in state courts. We therefore held that the questions concerning the revocability of the arbitration clause in the § 13 (c) agreement were governed by state law, and that the state law, as applied to the facts here, allowed MARTA to withdraw its consent to arbitrate before the award.

2. The union applied for certiorari from our decision to the United States Supreme Court. As previously stated, the Supreme Court granted certiorari and remanded the case for reconsideration in light of Southland Corp. v. Keating, supra.

In Southland Corp. v. Keating, supra, the California Supreme Court had interpreted California's Franchise Investment Law as requiring judicial consideration of claims brought under that statute, thereby rendering unenforceable arbitration clauses contained in such franchise agreements. However, the United States Supreme Court reversed. The Court held that, as interpreted by the California Supreme Court, the California statute conflicted with § 2 of the FAA, since the arbitration clauses under review were within its coverage. Section 2 of the FAA provides, "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2 (1976).

In Southland Corp. v. Keating, the Supreme Court held that the FAA creates a body of federal substantive law applicable in state and federal courts. Accord *Hilton Constr. Co. v. Martin &c. Contractors.,* 251 Ga. 701 (308 SE2d 830 ) (1983) and cits. In so holding, the Court noted, "We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked

upon 'grounds as exist at law or in equity for the revocation of any contract.' We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law." Slip Op. p. 8. (Footnote omitted.) However, this "broad principle of enforceability" is subject to additional limitations under federal law. See Div. 3 (c), infra.

3. Reconsidering this case in light of Southland Corp. v. Keating, we conclude that, for the three reasons which follow, the arbitration clause at issue here is not enforceable under the FAA.

(a) First, it would appear to us that this arbitration clause is revocable upon "grounds as exist at law or in equity for the revocation of any contract."

Prior to the Supreme Court's grant of the union's application for certiorari in this case, MARTA had argued that it lacked the authority to submit to arbitration the terms and conditions of a new collective-bargaining agreement with the union. Because of our conclusion that MARTA had validly withdrawn its consent to arbitrate, we found it unnecessary to decide whether it lacked the authority to give that consent in the first instance. Upon reconsideration, we conclude that it did lack such authority.

As pointed out in *Union v. MARTA*, prior to 1982 MARTA had not been given any express statutory authority to submit disputes with the union to arbitration.

"It was § 20(b) of the MARTA Act of 1965 (Ga. L. 1965, pp. 2243, 2273), which authorized the Board of Directors of MARTA to bargain with MARTA employees 'through such agents in the same manner and to the same extent as if they were the employees of any privately-owned transportation system.' This created an exception for MARTA, because under Georgia law local governmental entities generally are not permitted to bargain collectively with employee representatives. See *Intl. Longshoremen's Assn. v. Ga. Ports Auth.*, 217 Ga. 712 (1b) (124 SE2d 733) (1962).

"However, the 1982 Session of the Georgia General Assembly passed an Act which, among other things, amended the 1965 MARTA Act by striking § 20(b) and replacing it with § 20(b) (1) through (b) (8). Ga. L. 1982, pp. 5101, 5104, § 3. Section 20(b) (2) of the 1982 Act distinguishes between 'interest arbitration' ('arbitration which determines or formulates the terms and conditions of a labor agreement between the Authority and the authorized representative, including the formulation of contract provisions governing wages, hours, and working conditions.') and 'grievance arbitration' ('arbitration of a dispute between the Authority and the authorized representative acting on behalf of an employee which involves the application or interpretation of the terms and conditions of an existing labor agreement.'). Subsection (b) (2) requires MARTA to submit labor disputes to bind-

ing grievance arbitration; and labor disputes which involve the formulation of contract provisions other than wages, and which cannot be settled by collective-bargaining or fact-finding under subsection (b) (5), shall be submitted to binding interest arbitration. Subsection (b) (2) further provides that '[a]ny labor dispute involving the formulation of contract provisions governing wages may, with the consent of both parties, be submitted to binding interest arbitration.' Subsections (b) (2) (A) through (G) specify certain inherent rights of MARTA management which cannot be diluted, diminished, or impaired by an arbitration award or labor agreement. Subsection (b) (3) requires any neutral arbitrator appointed or selected to decide any interest arbitration to be a resident of either Fulton or DeKalb County. Subsections (b) (4) (A) through (F) require the arbitrator in interest arbitration proceedings to give weight primarily to certain factors, e.g., financial ability of MARTA to pay wages, the amount of any fare increase which would be necessary to afford a wage or salary increase, a comparison of wages, hours, working conditions, etc., between MARTA employees and other workers in the public and private sectors of the metropolitan area who perform similar work. The 1982 Act became effective upon being signed by the Governor, which occurred on April 20, 1982." 251 Ga., supra at p. 17, n. 1.

Our analysis of both Georgia law and the law of other states leads us to conclude that, without this express statutory authority, which did not exist in 1977 when the collective-bargaining agreement at issue was entered into or in February 1982 when MARTA revoked its consent to arbitration, MARTA's consent to arbitrate the terms and conditions of a new collective-bargaining agreement was an unlawful delegation of legislative authority.[1]

It has been said to be a "well-established general rule that counties and municipal corporations can exercise only such powers as are conferred on them by law, and a grant of power to such corporations must be strictly construed; and such a corporation can exercise no powers except such as are expressly given or are necessarily implied from express grant of other powers, and if there is a reasonable doubt of the existence of a particular power, this doubt is to be resolved in the negative. [Cits.]." *Beazley v. DeKalb County*, 210 Ga. 41, 43 (77 SE2d 740) (1953). "The rule is well settled that legislative power cannot be delegated by a municipality, unless expressly authorized by the

---

[1] Formulation of the terms and conditions of employment of a municipal transit authority's employees is an exercise in governmental decision making, which, at least to the extent that it involves wages and salaries, has a direct impact on the municipal budget. See Greeley Police Union v. City Council of Greeley, infra. It is, therefore, properly characterized as an exercise of legislative, or at least quasi-legislative, authority. See Boston Printing Pressmen's Union v. Potter Press, infra.

statute conferring the power." 2 McQuillin, The Law of Municipal Corporations, § 10.40, p. 846 (3rd ed., 1979 rev.). See *Green v. City of Atlanta*, 162 Ga. 641 (5) (135 SE 84) (1926).

Cases such as *Green v. City of Atlanta*, supra, thus exemplify the general rule that legislative power cannot be delegated unless expressly authorized by statute. This general rule is applicable whether the power is delegated through the mechanism of an arbitration agreement or through some other device. See *Green v. City of Atlanta*, supra.

From this general rule flows a more specific rule that, at least in the absence of express statutory authority, a municipal agency lacks the power to delegate to arbitrators the authority to determine the conditions of employment of the agency's employees. See, e.g., American Airlines v. Louisville & Jefferson County Air Board, 269 F2d 811 (6th Cir. 1959); Salt Lake City v. Int. Assn. of Firefighters, 563 P2d 786 (Utah 1977); Greeley Police Union v. City Council of Greeley, 553 P2d 790 (Colo. 1976); Town of Arlington v. Bd. of Conciliation & Arbitration, 352 NE2d 914 (Mass. 1976); City of Amsterdam v. Helsby, 332 NE2d 290 (NY 1975).

For its part, Southland Corp. v. Keating, supra, would appear to uphold under § 2 of the FAA the validity of a state-law defense to an arbitration agreement if the defense is applicable to all other contracts, i.e., "general contract defenses." Slip Op., pp. 13-14, n. 11. However, the holding of Southland Corp. v. Keating, supra, is that state-law defenses applicable only to arbitration agreements generally, or to a specific class of arbitration agreements, must give way to the "broad principle of enforceability" manifested in the FAA.

The arbitration clause here is invalid as an unauthorized arbitration agreement, and in a more general sense it is also invalid as an unlawful delegation of legislative authority. Since any contract unlawfully delegating legislative authority is ultra vires and void, we conclude that this arbitration clause is revocable upon "grounds as exist at law or in equity for the revocation of any contract."

(b) And, based on the only persuasive authority to which we have been cited on the question, it would appear that an agreement concerning interest arbitration, as opposed to grievance arbitration, is not covered by the FAA.

In Boston Printing Pressmen's Union v. Potter Press, 141 FSupp. 553 (DC Mass. 1956), affirmed, 241 F2d 787 (1st Cir. 1957), cert. den. 355 U. S. 817 (1957), it was held that a provision in a collective-bargaining agreement under which the parties agreed to submit to arbitration the terms of a new collective-bargaining agreement, i.e., interest arbitration, does not fall within the ambit of the FAA. In so holding, the court distinguished agreements to arbitrate grievances under an existing collective-bargaining agreement, i.e., grievance arbi-

tration, which, as held by the court, do come under the FAA.

The union argues that Potter Press has been, in effect, overruled by Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U. S. 448 (77 SC 912, 1 LE2d 972) (1957). The majority opinion in Lincoln Mills dealt with the question of whether an agreement to arbitrate grievances arising under a collective-bargaining agreement which contained a no-strike clause was subject to specific enforcement under § 301 (a) of the Labor Management Relations Act of 1947. As recognized in Justice Frankfurter's dissent, the majority opinion in Lincoln Mills gives "silent treatment to," and "glaringly ignores" the FAA. 353 U. S. at pp. 466-467.

(c) Finally, an argument could be made that under UMTA an arbitration clause in a § 13 (c) agreement is exempt from the FAA.

In the course of rendering its decision in Southland Corp. v. Keating, the Court distinguished its earlier decision in Wilko v. Swann, 346 U. S. 427 (74 SC 182, 98 LE 168) (1953). Wilko v. Swann held that, notwithstanding the FAA, arbitration provisions are unenforceable where buyers of securities waive their right to sue the seller in court for violations of the federal Securities Act of 1933. In Southland Corp. v. Keating, the Court stated: "The question in Wilko was not whether a state legislature could create an exception to § 2 of the Arbitration Act, but rather whether Congress, in subsequently enacting the Securities Act, had in fact created such an exception." Slip Op. p. 13, n. 11.

Likewise, the question here is not whether a state legislature can exempt itself from the FAA, but whether Congress has created such an exemption. As noted in our earlier opinion in this case, Jackson Transit Auth., supra, holds that, in enacting UMTA, Congress has clearly expressed its intent that labor relations between transit workers and local governments be controlled by state law and policy. Based on this rationale, Jackson goes on to hold that § 13 (c) agreements are to be governed by state law to be applied in state courts.

An arbitration clause is an integral part of a § 13 (c) agreement, as well as an integral feature of the labor-relation scheme between a local transit authority and its workers. Therefore, under Jackson's rationale, it would seem to follow that Congress, in enacting UMTA, has exempted from the coverage of the FAA arbitration provisions contained in § 13 (c) agreements. However, it is true that Southland Corp. v. Keating itself does not explicitly recognize this exemption.

In any event, for the reasons expressed in this opinion, we find that reconsidering this case in light of Southland Corp. v. Keating, supra, provides no grounds for reversing our earlier judgment.

*Judgment reinstated. All the Justices concur, except Gregory, J., who concurs specially.*

DECIDED SEPTEMBER 5, 1984.

*Jacobs, Burns, Sugarman & Orlove, Linda R. Hirshman, Adair &
Goldthwaite, Donald R. Livingston,* for appellants.
*Kutak, Rock & Huie, W. Stell Huie, Terrence Lee Croft, Law-
rence L. Thompson, C. Wilson Dubose,* for appellee.

GREGORY, Justice, concurring specially.

I agree with the result reached in this case and with what is said
in parts (a) and (b) of Division 3. While an argument can be made as
set out in part (c) of Division 3, I believe it is not the correct analysis.

I cannot agree with the majority's suggestion that Jackson
Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, 457
U. S. 15 (102 SC 2202, 72 LE2d 639) (1982), recognizes an exception
to the application of § 2 of the Federal Arbitration Act (FAA) to col-
lective bargaining agreements made under § 13 (c) of the Urban Mass
Transportation Act of 1964 (UMTA). The Supreme Court simply
pointed out in that case that the legislative history of § 13 (c) indi-
cates a Congressional intent for collective-bargaining contracts be-
tween UMTA aid recipients and transit unions to be governed by
state law applied in state courts. The court did not address the appli-
cability of § 2 of the FAA to § 13 (c) UMTA agreements. However,
Southland Corp. v. Keating, 465 U. S. ___ (104 SC 852, 79 LE2d 1)
(1984) holds that Congress intended § 2 of the Federal Arbitration
Act to be used to enforce arbitration agreements in cases litigated in
state courts and governed by state law. The court points out in
Southland that the FAA reflects a broad national policy in favor of
arbitration "unencumbered by state law restraints." 104 SC at 859.
The "purpose of the Act was to assure those who desired arbitration
and whose contracts related to interstate commerce that their expec-
tations would not be undermined by federal judges or . . . by state
courts or legislatures." 104 SC at 860, quoting Metro Industrial Paint-
ing Corp. v. Terminal Constr. Co., 287 F2d 382, 387 (2nd Cir. 1961)
(Lumbard, Chief Judge, concurring).