S01A0069. GARDEN HILLS CIVIC ASSOCIATION, INC. et al.
v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al.
(539 SE2d 811)

CARLEY, Justice.

The dispute in this case arises from the proposed development of the 47 acres of land surrounding the Metropolitan Atlanta Rapid Transit Authority (MARTA) Lindbergh Station. MARTA initiated the project by issuing a Request For Proposal (RFP), which solicited plans from prospective developers. The RFP did not include the submission of bids as a criterion for selection and did not express MARTA's intention to dispose of the property. Instead, MARTA noted its preference for a ground lease, but its willingness to consider other business arrangements. Although the RFP did not state that MARTA would make any capital contribution, MARTA subsequently committed $40 million of its funds toward improvement of the property. The size of the development, including the density, was left open for negotiation. Two developers submitted proposals and, after negotiations,

MARTA selected Carter & Associates (Carter). Appellants oppose the project and brought suit to prevent MARTA from implementing its agreement with Carter. After conducting a hearing, the trial court denied Appellants' motion for an interlocutory injunction, and they appeal from that ruling.

1. The trial court based its denial of injunctive relief upon several findings, one of which was Appellants' failure to show "a substantial likelihood that [they] will succeed on the merits of their claims." Appellants urge that the trial court erred in requiring that they make such a showing as a prerequisite to obtaining a preliminary injunction.

A trial court may grant an interlocutory injunction "to maintain the status quo until a final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. [Cits.]" *Outdoor Advertising Assn. of Ga. v. Garden Club of Ga.*, 272 Ga. 146, 147 (1) (527 SE2d 856) (2000). In establishing an equitable balance between the opposing parties, the likelihood of the applicant's ultimate success is not the determinative factor. "[T]he possibility that the party obtaining a preliminary injunction may not win on the merits at the trial does not *determine* the propriety or validity of the trial court's granting the preliminary injunction. [Cit.]" (Emphasis supplied.) *Glen Oak v. Henderson*, 258 Ga. 455, 457 (1) (d) (369 SE2d 736) (1988). See also *Zant v. Dick*, 249 Ga. 799, 800 (294 SE2d 508) (1982) (rejecting the argument "that a substantial likelihood of success on the merits *must* be shown in order to entitle an applicant to interlocutory injunctive relief in the courts of Georgia.") (Emphasis supplied.)

Although the merits of the case are not controlling, they nevertheless are proper criteria for the trial court to consider in balancing the equities.

> If the trial court determines that the law and facts are so adverse to a plaintiff's position that a final order in his favor is unlikely, it may be justified in denying the temporary injunction because of the inconvenience and harm to the defendant if the injunction were granted. [Cit.]

*Lee v. Environmental Pest & Termite Control*, 271 Ga. 371, 373 (2) (516 SE2d 76) (1999). See also *Ledbetter Bros. v. Floyd County*, 237 Ga. 22 (1) (226 SE2d 730) (1976). Thus, "[i]n determining whether the equities favor one party or the other, a trial court *may* look to the final hearing and contemplate the results. [Cit.]" (Emphasis supplied.) *Lee v. Environmental Pest & Termite Control*, supra at 373 (2).

Under the principle of balancing equities, . . . an interlocu-

tory injunction should be refused where its grant would operate oppressively on the defendant's rights, especially in such a case that the denial of the temporary injunction would not work "irreparable injury" to the plaintiff or leave the plaintiff "practically remediless" in the event it "should thereafter establish the truth of (its) contention." [Cits.]

*McKinnon v. Neugent*, 226 Ga. 331, 332 (174 SE2d 788) (1970). In this case, the trial court did consider the relative merits of the claims, but did not predicate the denial of the injunction entirely upon its finding that Appellants failed to show a substantial likelihood of success. The order reflects the trial court's additional findings that Appellants were "not likely to suffer immediate and irreparable injury if the interlocutory injunction is not entered" and that the potential "injury to [MARTA] outweighs any harm to" Appellants. Therefore, the trial court applied the correct standard.

The record further shows that, in making its ruling, the trial court adhered to the principle that, "[w]hen there is no material conflict in the evidence, the applicable rules of law cannot be avoided on the basis of discretion. [Cit.]" *American Buildings Co. v. Pascoe Building Systems*, 260 Ga. 346, 348 (1) (392 SE2d 860) (1990). Where, as here, "there is no conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law. [Cits.]" *Zant v. Dick*, supra at 799-800. Whether the trial court was correct in its application of the law to the undisputed facts remains for determination in this appeal, but there is no merit in Appellants' contention that, in denying the injunction, the trial court applied an erroneous legal standard.

2. The provision of the Georgia Constitution which authorizes the creation of MARTA provides that "the acquisition, establishment, operation or administration of a system of public transportation of passengers for hire within the metropolitan area . . . is an essential governmental function and a public purpose. . . ." Art. XVII, Sec. I, Par. I of the Ga. Const. of 1945. Because this constitutional provision "created or authorized the creation of [a] metropolitan rapid transit authorit[y]" and was "in force on the effective date of [the 1983] Constitution," it "continued in force as a part of [that] Constitution . . . ." Art. XI, Sec. I, Par. IV (d) of the Ga. Const. of 1983. Appellants urge that MARTA's agreement with Carter is ultra vires, as the proposed Lindbergh Project is not within the scope of this limited purpose and function.

The constitutional provision "shall be liberally construed to effectuate its purpose. . . ." Art. XVII, Sec. I, Par. V of the Ga. Const. of 1945. Moreover, it authorizes the General Assembly to grant

MARTA "such other powers as may be *necessary or convenient* for the accomplishment of the aforesaid function and purpose." (Emphasis supplied.) Art. XVII, Sec. I, Par. II of the Ga. Const. of 1945. In the exercise of that broad authority, the General Assembly has empowered MARTA to "lease (as lessor), transfer, or dispose [of real property] whenever same is no longer required for [its] purposes. . . ." Ga. L. 1965, pp. 2243, 2253, § 8 (c). The 47-acre tract surrounding the Lindbergh Station is a MARTA asset, but MARTA has no present need to possess the entirety of that parcel in order to accomplish its rapid transit purpose. By leasing the property to Carter, MARTA intends to convert the real estate into an income-producing asset, with the resulting rent used to fund its existing operations and future expansion. Increasing MARTA's revenue base through the lease of surplus property is in furtherance of its underlying purpose of providing the metropolitan Atlanta area with a functioning rapid transit system. See *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452 (339 SE2d 583) (1986) (observing that although MARTA "did not presently need the air rights to construct a ground level parking lot, . . . it might at some time in the future sell or lease the air rights to developers to generate revenues").

MARTA is authorized to exercise only those powers " 'such as are expressly given or are necessarily implied from express grant of other powers, and if there is a reasonable doubt of the existence of a particular power, this doubt is to be resolved in the negative. (Cits.)' [Cit.]" *Local Div. 732, Amalgamated Transit Union v. MARTA*, 253 Ga. 219, 222 (320 SE2d 742) (1984). There is no reasonable doubt as to the existence of MARTA's power to lease its excess real property, because such authority is expressly granted by the act creating that entity.

3. Appellants maintain that, even if MARTA has the general constitutional and statutory authority to lease its real property, the agreement with Carter is still invalid because MARTA cannot engage in an independent enterprise of the type usually pursued by private individuals. Ga. L. 1965, pp. 2243, 2256, § 8 (p); *Woodard v. Smith*, 254 Ga. 39, 40 (2) (325 SE2d 377) (1985). However, MARTA has no plans to develop the property itself. Compare *Tift County Hosp. Auth. v. MRS of Tifton*, 255 Ga. 164, 165 (2) (335 SE2d 546) (1985). The proposal is for MARTA merely to lease its property, so that Carter can develop a mixed-use project consisting of both residential and commercial components. At the end of the lease term, possession of the property will revert to MARTA. In the meantime, MARTA will receive rent and will benefit from any increase in its ridership attributable to Carter's development of the property. Thus, the financial gain to MARTA will come from the lease of its own property and the operation of its transit system. It will not result from

any immediate competition by MARTA with private enterprise. Because MARTA will not engage directly in any business operation conducted on the property it leased to Carter, the agreement between the two is not barred.

4. Appellants further contend that MARTA is not authorized to expend $40 million of its funds in connection with the project. The evidence shows that the money will be used for infrastructure and amenities which will enhance the over-all value of the property itself and improve the utilization of the rapid transit station, thus generally benefitting MARTA riders and particularly those who use the Lindbergh Station. MARTA is vested with broad discretion to address "whether the factors of cost, convenience and safety should be weighed in favor of the patrons of the system . . . ." *Concept Capital Corp. v. DeKalb County*, supra at 454 (5). The use of MARTA's funds to increase the value of its property for the benefit of its ridership is an expenditure in furtherance of a valid public purpose. See *City of Atlanta v. Petkas*, 253 Ga. 447 (321 SE2d 725) (1984).

5. Appellants assert that project cannot go forward because, prior to entering into the agreement with Carter, MARTA did not adhere to the competitive bidding procedure mandated by statute. The MARTA Act provides generally that "[a]ll such acquisitions, dispositions and contracts involving $100,000 or more shall be awarded only after" MARTA conducts a competitive bidding process in accordance with a detailed specified procedure. Ga. L. 1965, pp. 2243, 2268, § 14 (b); Ga. L. 1998, pp. 4450, 4451, § 2. However, a subsequent subsection of the statute addresses the limited issue of contracts for the disposition of real property, and that provision states that

> [c]ontracts for the sale, lease or other disposition of real property owned by [MARTA] shall be awarded only after competitive bidding and to the highest responsible bidder *in a manner similar to that required in subsection (b).*

(Emphasis supplied.) Ga. L. 1965, pp. 2243, 2269, § 14 (g). There is an obvious distinction between a provision which applies to any transaction, whether by purchase or sale, involving undesignated forms of property in general, and one which specifically addresses a transaction involving the disposal of real property. "For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent. [Cit.]" *Vines v. State*, 269 Ga. 438, 440 (499 SE2d 630) (1998). Had the legislative intent been to require MARTA to conduct all transactions involving its assets in accordance with the competitive bidding procedure established in subsection 14 (b) of the MARTA Act for the acqui-

sition and disposition of property generally, the General Assembly would not have enacted subsection 14 (g) of that statute as a separate provision specifically addressing the disposition of MARTA's real estate. Therefore, the latter provision controls here, and, in dealing with the Lindbergh Station development, MARTA was required only to follow a competitive bidding process conducted in a manner similar, rather than identical, to that required for the acquisition and disposition of its assets other than real property.

The purpose of the competitive bidding process is to protect the public coffers and assure that taxpayers receive the best possible price. *City of Atlanta v. J.A. Jones Constr. Co.*, 260 Ga. 658 (1) (398 SE2d 369) (1990). MARTA used the RFP to solicit proposals from developers, similar to the solicitation of bids from suppliers for MARTA's acquisition of items of personal property. MARTA sent brochures to approximately 500 prospective developers advertising the availability of the property, and in addition published relevant information for several weeks before the date for submission of proposals. Some 19 firms purchased the RFP. Unlike items of personalty, real property is unique and transactions related thereto contemplate the negotiation of terms other than price. Accordingly, upon receiving proposals from the two developers who expressed interest in the Lindbergh project, MARTA began negotiations, in an apparent effort to maximize its benefit from the lease of the property. Thereafter, MARTA determined that Carter submitted the best plan for developing the tract and was, therefore, analogous to the highest responsible bidder. There is no contention that MARTA did not act in good faith or that a more lucrative offer was lost. This undisputed evidence authorized the trial court to find that MARTA reached its agreement with Carter after conducting a competitive bidding process in a manner similar to that required in subsection 14 (b) of the MARTA Act.

6. Appellants contend that the trial court erroneously relied upon federal, rather than state, law. A review of the order shows that the court did not cite federal law as controlling authority. It merely noted that federal law was consistent with the provisions and mandate of the applicable law of Georgia. Having correctly applied the law of this state to the facts, the trial court was authorized to deny Appellants' application for an interlocutory injunction.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 30, 2000 —
RECONSIDERATION DENIED DECEMBER 15, 2000.

*Chamberlain, Hrdlicka, White & Williams, Richard N. Hubert, Mary C. Cooney*, for appellants.

*Powell, Goldstein, Frazer & Murphy, Carl E. Westmoreland, Jr., Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr., Christian F. Torgrimson, Maddox, Nix, Bowman & Zoeckler, Thomas A. Bowman, David D. Blum,* for appellees.

*Allen, Kopet & Boyd, Matthew D. Gansereit,* amicus curiae.