A03A2096. BELLSOUTH CORPORATION v. FORSEE.
A03A2097. CINGULAR WIRELESS CORPORATION et al.
v. FORSEE.
(595 SE2d 99)

PHIPPS, Judge.

This litigation pits two of our nation's major telecommunications companies against one of their key executives. The companies complain that if the executive accepts an offer of employment by a competitor of theirs, he will breach noncompetition and nondisclosure covenants in his employment agreement. The companies seek arbitration of the dispute. The Superior Court of Fulton County entered a temporary restraining order (TRO) forbidding the executive from accepting employment with the competitor pending arbitration. The court, however, found the noncompetition covenant to be invalid and unenforceable, and the TRO as currently entered removes this clause from the arbitrator's consideration. The telecommunications companies appeal, contending that the superior court was without authority to issue a final ruling with respect to the validity of the noncompetition covenant and should have submitted the issue to the arbitrator. We disagree and affirm.

Gary Forsee was employed as vice chairman of domestic operations for BellSouth Corporation, a Fortune 100 company providing a broad range of telecommunications services in the United States and foreign countries. Forsee also served as chairman of the board of directors of Cingular Wireless Corporation and Cingular Wireless (collectively "Cingular"). Cingular is a joint venture between Bell-South and SBC Communications, and it is the second largest wireless telecommunications company in the United States.

BellSouth and Cingular filed separate complaints in superior court after Forsee announced his intention to resign and accept a position as chairman of the board of directors and chief executive officer of Sprint Corporation, an arch competitor of BellSouth's. In their complaints, BellSouth and Cingular sought to temporarily enjoin Forsee from accepting employment with Sprint. They claim that as a result of performing his job duties, Forsee has become intimately familiar with highly confidential and trade secret information of BellSouth and Cingular which he would inevitably disclose when making business decisions and judgments on behalf of Sprint. They

also claim that his acceptance of employment with Sprint would violate the noncompetition covenant in his employment agreement.

The superior court granted BellSouth's request for an ex parte TRO prohibiting Forsee from accepting employment with Sprint. But after conducting an emergency hearing, the court issued an order finding the noncompetition covenant in Forsee's employment agreement unenforceable under Georgia law and dissolving the part of the TRO that related to it. Invoking an arbitration clause in Forsee's employment agreement, both BellSouth and Cingular moved to compel arbitration. The superior court conducted another hearing and, consistent with its earlier ruling, granted the motion to compel arbitration as to any controversy arising out of the nondisclosure provision of the employment agreement but denied the motion with regard to any controversy arising out of the noncompetition covenant. In Case No. A03A2096, BellSouth appeals the order of the superior court dissolving part of the TRO (the modification order). In Case No. A03A2097, Cingular appeals the order denying in part the motion to compel arbitration (the arbitration order).

"[T]he standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law. [Cit.] In addition, the construction of a contract is a question of law for the court that is subject to de novo review. [Cit.]"[1]

## The scope of arbitrable issues

The parties agree that the employment agreement at issue involves interstate commerce, and that the Federal Arbitration Act (FAA),[2] as well as consistent provisions of the Georgia Arbitration Code (GAC),[3] apply.[4] " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Cit.]"[5] Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination.[6] The FAA, however, "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable

---

[1] *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

[2] 9 USC § 1 et seq.

[3] OCGA § 9-9-1 et seq.

[4] See *Simmons Co. v. Deutsche Financial Svcs. Corp.*, 243 Ga. App. 85, 86 (1) (532 SE2d 436) (2000).

[5] *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 648 (106 SC 1415, 89 LE2d 648) (1986).

[6] Id. at 649; see *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 83 (2) (526 SE2d 141) (1999) (courts should not assume that parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so).

issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[7]

> [T]he Supreme Court has instructed that there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." [Cits.] . . . Accordingly, an injunction against arbitration is appropriate only where an asserted claim "clearly falls outside of the substantive scope of the agreement." [Cit.][8]

Moreover, "the Supreme Court cautions that a court considering arbitrability 'is not to rule on the potential merits of the underlying claims.' [Cit.] Even if it appears to the reviewing court that the claims asserted are meritless or even frivolous, it must not allow those considerations to interfere with its determination of arbitrability. [Cit.]"[9]

The GAC is in accord. It grants a superior court authority to "entertain an application . . . for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."[10] The GAC further provides that "the court shall not consider whether the claim with respect to which arbitration is sought is tenable nor otherwise pass upon the merits of the dispute."[11] " '[C]ourts cannot inquire into the merits of an arbitrable controversy.' "[12] Similarly, in passing upon an application for a stay of arbitration proceedings under the FAA, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."[13] "[T]he Court may address only the issue of whether the arbitration clause itself is valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[14]

---

[7] (Footnote omitted.) *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24-25 (103 SC 927, 74 LE2d 765) (1983).

[8] *Hornor, Townsend & Kent v. Hamilton*, 218 FSupp.2d 1369, 1374 (N.D. Ga. 2002).

[9] Id.

[10] OCGA § 9-9-4 (e).

[11] OCGA § 9-9-4 (d).

[12] *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 387 (1) (512 SE2d 300) (1999).

[13] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 404 (87 SC 1801, 18 LE2d 1270) (1967).

[14] (Citation and punctuation omitted.) *Hydrick v. Mgmt. Recruiters Intl.*, 738 FSupp. 1434, 1435 (N.D. Ga. 1990).

## The arbitration order — facts and law

In the order entered on Cingular's motion to compel arbitration, the court reviewed both the arbitration provision and a severability clause in the parties' agreement. As found by the trial court, the arbitration provision requires "[a]ny dispute, controversy or claim arising out of or relating to" the agreement or to "the breach, termination or invalidity" thereof to be settled by arbitration pursuant to the rules of the American Arbitration Association. The severability clause states that if any provision of the agreement "shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, the remaining provisions shall remain in full force and effect." The agreement further provides that it is to be construed under and governed by the laws of the state of Georgia. The superior court concluded that the severability clause authorized it to remove from arbitration those provisions of the agreement it determined to be illegal, invalid, or unenforceable.

In support of its conclusion that the severability clause in the parties' agreement authorized it to determine the validity of the noncompetition clause rather than submit the question to arbitration under the arbitration clause, the superior court cited the decision of the United States Supreme Court in *Howsam v. Dean Witter Reynolds, Inc.*,[15] the decision of this court in *Primerica Financial Svcs. v. Wise*,[16] and decisions by various lower federal courts.

In *Howsam*, a securities dealer sued one of its clients, seeking a judicial determination that the client's demand to arbitrate a grievance was barred by a time limit imposed by the governing arbitration code. The issue before the Supreme Court was whether such a "gateway dispute" raised a "question of arbitrability" for the court to decide.[17] The Court concluded that even though resolution of the question would determine whether the underlying controversy would proceed to arbitration on the merits, and was thus potentially dispositive, it was a matter for the arbitrator to decide. Distinguishing other cases, the Court held that gateway disputes raising questions of arbitrability concern such questions as whether the parties are bound by an arbitration clause or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.[18] The issue in this case — whether a noncompetition covenant

---

[15] 537 U. S. 79 (123 SC 588, 154 LE2d 491) (2002).
[16] 217 Ga. App. 36, 37-38 (2), (3) (456 SE2d 631) (1995).
[17] *Howsam*, supra at 83-84.
[18] Id. at 84; but compare *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790, 792 (2) (469 SE2d 759) (1996) (court in effect finds that whether party has complied with a provision of arbitration agreement setting forth a condition precedent to arbitration is a gateway question for court).

in an employment contract is legally enforceable — does not raise an issue of arbitrability under *Howsam*.

*Primerica*[19] and the lower federal cases cited by the superior court held that in view of severability clauses in the parties' agreements, arbitration provisions were not rendered unenforceable because they contained invalid parts.[20] Thus, in those cases the trial courts were deciding whether the controversy was arbitrable, rather than the merits of the dispute as here. Consequently, the cases cited by the superior court do not support its determination that the severability clause authorized it to reach the merits as well as the arbitrability of the dispute.

## Arguments on appeal

Forsee argues that BellSouth nonetheless invoked a ruling from the superior court as to the enforceability of the provisions in the employment agreement and, therefore, cannot complain of an adverse decision.

As a matter of Georgia procedure, it has been held that "[t]he entry of permanent relief after an interlocutory hearing is improper unless there is an order consolidating the trial on the merits with the hearing on the application for interlocutory injunction as provided in OCGA § 9-11-65 (a) (2), or the parties have acquiesced. [Cit.]"[21] In this case, the superior court did not consolidate the trial on the merits with any of the TRO hearings.[22] Nor did BellSouth or Cingular acquiesce in any decision by the court to issue a final ruling on the merits of any issue. In fact, at the first hearing, BellSouth's attorney informed the court that BellSouth had invoked the arbitration provision in the parties' agreement; that due to concerns of confidentiality, arbitration was a more appropriate forum to develop the facts; that

---

[19] Supra.

[20] See id. (in accordance with a severability clause in the parties' agreement, trial court did not err in striking a section of the arbitration clause concerning eligibility of arbitrators as violative of the FAA; but trial court did err in striking another part of arbitration clause governing judicial review, as latter provision was not violative of the FAA); *Gannon v. Circuit City Stores*, 262 F3d 677 (8th Cir. 2001) (holding that under a severability clause, arbitration provision was not rendered unenforceable because it contained an invalid limitation on punitive damages); *SI V v. FMC Corp.*, 223 FSupp.2d 1059 (N.D. Cal. 2002) (provision of arbitration agreement, allowing for judicial review of errors of law and thereby unlawfully expanded jurisdiction of reviewing court, invalidated under severance clause so that arbitration agreement could remain in full force and effect); *Spinetti v. Svc. Corp. Intl.*, 240 FSupp.2d 350 (W.D. Pa. 2001) (provisions of arbitration employment agreement, unenforceable because they required payment of attorney fees and costs by employee even if she prevailed, severed without disturbing the primary intent of the parties to arbitrate their dispute).

[21] *HMC Realty v. Charis Community Housing*, 273 Ga. 817, 818 (546 SE2d 498) (2001).

[22] Compare *Regency Club v. Stuckey*, 253 Ga. 583, 586 (3) (324 SE2d 166) (1984).

this was why the parties agreed to arbitrate contractual disputes; that BellSouth was seeking only to preserve the status quo pending arbitration; and that, ultimately, the issues should be joined in arbitration. Therefore, even though BellSouth did ask the superior court to enforce the noncompetition provision as a basis for entering the TRO against Forsee, it did not seek a final decision.

In arguing that a final ruling was authorized, Forsee relies primarily on *Uni-Worth Enterprises v. Wilson*.[23] There, our Supreme Court did recognize that, in denying an interlocutory injunction, the trial court had not erred in entering a final ruling on the validity of a restrictive covenant in an employment contract, because the court had determined a legal question not based on an adjudication of contested facts.[24]

### The covenant not to compete

The covenant not to compete in this case states that while employed by BellSouth "or an affiliated company," and for a period of 18 months after termination from employment, Forsee will not

> provide services (as more fully described below) in competition with [BellSouth] or any affiliated company to any person or entity which provides products or services identical or similar to products and services provided by [BellSouth] or affiliated companies in the same market(s), whether as an employee, consultant, independent contractor, or otherwise, within the territory.

"Affiliated companies" is defined as each entity in respect of which BellSouth owns directly or indirectly at least ten percent in the capital or profits of such entity. "Territory" is defined under the agreement as the territory in which Forsee provided services to BellSouth, affiliated companies, and additional markets listed on an exhibit attached to the agreement. In the noncompete covenant, Forsee agreed "that because of the widespread nature of [BellSouth's] business, breach of this agreement by engaging in competitive activity anywhere in this broad territory would irreparably injure [BellSouth] or affiliated companies and that, therefore, a more limited geographic restriction is neither feasible nor appropriate." The "services" which Forsee is prohibited from providing "include" "manage-

---

[23] 244 Ga. 636, 640 (2) (261 SE2d 572) (1979).

[24] See also *Ken's Stereo-Video Junction v. Plotner*, 253 Ga. App. 811, 813 (1) (560 SE2d 708) (2002) (scope of activity rendered entire covenant unenforceable as a matter of law, where employee's responsibilities were narrowly limited and noncompete clause would have prevented him from working, in any capacity, for another company).

ment, strategic planning, business planning, administration, or other participation in or providing advice with respect to the communications services business. . . ."

## The modification order

Finding evidence that the geographical area for which Forsee was responsible differed substantially from the "territory" defined in the agreement — and finding no evidence that Forsee had any direct responsibility over, or worked or supervised activities in, those regions — the superior court found the territorial restrictions overly broad and unenforceable. As authority, the court relied on the rule, as set forth in cases such as *W. R. Grace & Co. v. Mouyal*,[25] that "[a] restriction relating to the area in which the employer does business is generally unenforceable due to overbreadth, unless the employer can show a legitimate business interest that will be protected by such an expansive geographic description. [Cits.]"[26] The court also concluded that the agreement's open-ended definition of "affiliated companies" rendered the territorial restriction unenforceable under the rule, applied in *AGA, LLC v. Rubin*,[27] that " 'a territorial restriction which cannot be determined until the date of the employee's termination is too indefinite to be enforced.' [Cits.]"[28] The court also found the noncompetition covenant unenforceable under the principle set forth in *Howard Schultz & Assoc. v. Broniec*,[29] that

> [a] covenant not to compete is also unreasonable where the nature of the business activities in which the employee is forbidden to engage is not specified with particularity. [Cits.] These indefinite business activities generally are identified by reference to the employer's business; e.g., the employee agrees not to engage in or be employed by any "business similar to employer's business."[30]

## Our conclusions

In the modification order, the superior court applied Georgia's traditional test for determining the validity of a covenant not to compete ancillary to an employment contract.

---

[25] 262 Ga. 464 (422 SE2d 529) (1992).
[26] Id. at 466 (2).
[27] 243 Ga. App. 772 (533 SE2d 804) (2000).
[28] Id. at 774, citing older Supreme Court of Georgia cases.
[29] 239 Ga. 181 (236 SE2d 265) (1977).
[30] Id. at 184-185 (2).

Under the traditional test in Georgia, a covenant not to compete ancillary to an employment contract has been held unenforceable on public policy grounds, unless it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee. [Cit.] Under this test, it has been held that a restrictive covenant — which prohibits an employee from accepting employment with a competitor of the employer "in any capacity," or from engaging in a business "similar to" the employer's business or a "related trade" — is unenforceable in that it imposes a greater limitation upon the employee than is necessary for the protection of the employer and does not specify with particularity the nature of the business activities in which the employee is forbidden to engage. [Cits.][31]

In *Roberts v. Tifton Med. Clinic*,[32] however, we recognized that in *Watson v. Waffle House*,[33] "the Court held that rather than apply the three-element test of duration, territorial coverage, and scope of activity as an 'arbitrary rule,' it would utilize it as 'a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.' "[34] In *Nat. Teen-Ager Co. v. Scarborough*,[35] "the Court, citing [*Watson*], held that whether a given covenant falls into the prohibited 'in any capacity' category generally is not determinable solely from the face of the contract but must be determined based upon 'the particular factual setting to which it is applied.' "[36]

Notwithstanding *Watson* and its progeny, however, we have continued to hold, in *Jarrett v. Hamilton*,[37] *Ceramic & Metal Coatings Corp. v. Hizer*,[38] *AGA, LLC v. Rubin*,[39] *Advance Technology Consultants v. RoadTrac*,[40] and *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*,[41] that a territorial limitation which cannot be determined until the date of the employee's termination is unreasonable as a matter of law.[42] Under this line of cases, the superior court did not err in holding the noncompetition covenant unenforceable on its face.

---

[31] *Roberts v. Tifton Med. Clinic*, 206 Ga. App. 612, 614 (426 SE2d 188) (1992).

[32] Id.

[33] 253 Ga. 671, 673 (2) (324 SE2d 175) (1985).

[34] *Roberts*, supra at 616.

[35] 254 Ga. 467, 469 (330 SE2d 711) (1985).

[36] *Roberts*, supra.

[37] 179 Ga. App. 422, 424-425 (1) (346 SE2d 875) (1986).

[38] 242 Ga. App. 391, 393 (1) (529 SE2d 160) (2000).

[39] Supra.

[40] 250 Ga. App. 317, 322 (4) (551 SE2d 735) (2001).

[41] 253 Ga. App. 681, 685 (1) (b) (560 SE2d 268) (2002).

[42] See generally *ALW Marketing Corp. v. McKinney*, 205 Ga. App. 184, 185 (421 SE2d 565) (1992).

Although it is debatable whether the severability clause of the parties' agreement should be interpreted so broadly as to have allowed Forsee to litigate challenges to the facial validity of provisions of the employment agreement in a judicial forum in lieu of arbitration, here BellSouth and Cingular invoked the jurisdiction of the superior court to temporarily enjoin Forsee from accepting employment with Sprint. In determining whether to issue the TRO, the court initially was authorized to make a preliminary determination as to the enforceability of the noncompetition covenant in considering the likelihood of the applicants' success on the merits.[43] Once the noncompetition covenant was shown to be unenforceable on its face, *Wilson* authorized the court to enter a definitive ruling as to its unenforceability. Certainly at that point, the severability clause authorized the court to remove the invalid covenant from the arbitrator's consideration. Consequently, the modification and arbitration orders are affirmed.

*Judgments affirmed. Ellington, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED JANUARY 29, 2004 —
RECONSIDERATION DENIED FEBRUARY 13, 2004 

*Kilpatrick Stockton, Matthew H. Patton, James F. Bogan III, Alston & Bird, J. Thomas Kilpatrick, Lisa H. Cassilly, Emily S. Sanford, J. Henry Walker IV*, for appellants.

*King & Spalding, Michael C. Russ, William A. Clineburg, Jr.*, for appellee.

---

[43] See *Garden Hills Civic Assn. v. MARTA*, 273 Ga. 280, 281 (1) (539 SE2d 811) (2000).