**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A1715. SAMACA, LLC. v. CELLAIRIS FRANCHISE, INC. et al.

BARNES, Presiding Judge.

The appellant is Samaca, LLC ("Samaca"), a Florida limited liability company. The appellees are Cellairis Franchise, Inc. ("Cellairis") and Global Cellular, Inc. ("Global"), Georgia corporations, and Cell Phone Mania, LLC ("CPM"), a Florida limited liability company (collectively "appellees"). Samaca appeals from the trial court's order granting the appellees, motion to dismiss the complaint and to compel arbitration. Samaca contends that the trial court erred in denying its motion to strike, making certain factual findings as to the purchase and renewal of the franchise leases, and in finding that the arbitration agreements were not superceded and inconsistent with a forum selection clause. Following our review, we affirm.

"The standard of review from the [grant] of a motion to compel arbitration is whether the trial court was correct as a matter of law. Further, the construction of a contract is a question of law for the court that is subject to de novo review." (Footnotes omitted.) *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005). "The [appellees], as the parties seeking arbitration, bear the burden of proving the existence of a valid and enforceable agreement to arbitrate. And the validity of an arbitration agreement is generally governed by state law principles of contract formation." (Citations and punctuation omitted.) *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 509 (1) (765 SE2d 681) (2014).

The facts pertinent to this appeal demonstrate that Cell Phone Mania operated four franchises located at the Dolphin Mall in Miami, Florida, under franchise agreements with Cellairis. Global, an affiliate of Cellairis, licensed the spaces from the operator of the Dolphin Mall, and Cell Phone Mania sub-licensed the spaces to operate the franchises in Dolphin Mall from Global. On June 30, 2014, Cell Phone Mania and Samaca reached an agreement for Samaca to purchase Cell Phone Mania's four franchises , and in conjunction with the sale, Samaca entered into four new franchise agreements (the "Franchise Agreement") with Cellairis. The Franchise

2

Agreements contained an arbitration clause, whereby Samaca and Cellairis agreed to arbitrate:

> all controversies, claims, or disputes between Company and FRANCHISEE arising out of or relating to: a. This agreement or any other agreement between Company and FRANCHISEE; b. The relationship between FRANCHISEE and Company; c. The scope and validity of this Agreement or any other agreement between Company and FRANCHISEE, specifically including whether any specific claim is subject to arbitration at all (arbitrability questions) and/or d. The offer or sale of the franchise opportunity .... Any claims by or against any affiliate of the Company may be joined, in the Company's sole discretion, in the arbitration.

Sanaca also entered into four new sub-license agreements (the "Sub-License Agreements") with Global to acquire Cell Phone Mania's sub-licenses to operate the franchises in the mall. The Sub-License Agreements, also effective June 30, 2014, contained a similar agreement, whereby Samaca and Global agreed to arbitrate:

> all controversies, claims, or disputes between Company and Sub-licensee arising out of or relating to: a. This Agreement or any other agreement between Company and Sub-licensee; b. The relationship between Sub-licensee and Company; c. The scope and validity of this Agreement or any other agreement between Company and Sub-licensee, specifically including whether any specific claim is subject to arbitration at all (arbitrability questions); and/or d. Any agreement relating to the

3

purchase of products or services by Sub-licensee from Company .... Any claims by or against any affiliate of the Company may be joined, in the Company's sole discretion in the arbitration.

Either on the same day or within the same time period, Cell Phone Mania, Samaca, and Cellairis executed an Assignment and Assumption Agreement (the "AA Agreement"), effective September 1, 2014, reflecting the parties' various assignments and assumptions related to the purchase of the franchises and sub-licensing of the mall spaces. The AA Agreement also stated that Samaca was required to sign new franchise and sub-license agreements which were "attached to this Agreement" and "incorporated herein by this reference," and that it would abide by all of the "terms, conditions, and requirements" of the Franchise and Sub-License Agreements. However, those new agreements within the AA Agreement were not signed. The AA Agreement contained a choice of law provision stating, in pertinent part, that:

> This Agreement shall be governed by and construed under the laws of the State of Georgia, without regard to its conflicts of laws provisions. The parties acknowledge and agree that the Georgia State Courts for Fulton County, Georgia, or if such court lacks jurisdiction, the U.S. District for the Northern District of Georgia, shall be the sole and exclusive venue and sole and exclusive proper forum in which to adjudicate any case or controversy arising either, directly or indirectly, under or in connection with this Agreement and the parties further agree

4

that, in the event of litigation arising out of or in connection with this Agreement in these courts, they will not contest or challenge the jurisdiction or venue of these courts. The parties expressly consent and submit to the jurisdiction and venue of these courts, and the parties waive any defenses of lack of personal jurisdiction, improper venue and *forum non conveniens*.

It further provided that, the "Agreement may be executed in several counterparts, each of which shall be deemed as an original, but all of which together shall constitute one and the same instrument."

Samaca took possession of the four franchise units on October 1, 2014 and began operating the franchise units. However, later in 2014, Cellairis, Global, and Samaca learned that Dolphin Mall would not renew the licenses for the franchise locations at Dolphin Mall. In March 2015, Samaca sued Cellaris and Global in state court in Florida seeking to rescind the Franchise Agreement and Sub-License Agreements. Cellairis and Global moved to dismiss that action based on the arbitration clauses and because the complaint failed to state a claim. Before the Court ruled on that motion, Samaca voluntarily dismissed its suit, and subsequently initiated the underlying complaint in Georgia state court.

The appellees filed a motion to dismiss and compel arbitration based on the arbitration agreements in the Franchise Agreements and the Sub-License Agreements. In response, Samaca amended its complaint to allege that the AA Agreement and attendant choice of law provision superseded the Franchise Agreements and Sub-License Agreements and their attendant arbitration clauses. The trial court granted the appellees motion to dismiss and to compel arbitration, finding that, contrary to Samaca's contention, the arbitration agreements contained in the Franchise and Sub-licensing Agreements were not superceded by the AA Agreement.

1. Initially we note that, as is the case here, "the [Federal Arbitration Act] FAA applies in state and federal courts to all contracts containing an arbitration clause that involves or affects interstate commerce." (Citation omitted.) *American Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 638 (1) (732 SE2d 746) (2012).[1] "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties

---

[1] 9 USC § 2 of the FAA provides that:
A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

agreed to arbitrate that dispute."(Citation, punctuation, and emphasis omitted.) *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 40 (5) (456 SE2d 631) (1995). And as a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citation and punctuation omitted.) *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 648 (106 SCt. 1415, 89 LE2d 648) (1986).

> [T]he federal policy favoring arbitration is taken into consideration even in applying ordinary [s]tate law. The federal policy favoring arbitration is not, however, the same as applying a presumption of arbitrability. We only apply the presumption of arbitrability to the interpretation of contracts if we have already determined that, under [s]tate law, the parties formed a valid agreement to arbitrate.

(Punctuation omitted.) *Bickerstaff v. SunTrust Bank*, 332 Ga. App. 121, 128-129 (2) (a) (770 SE2d 903) (2015), reversed on other grounds, 299 Ga. 459 (788 SE2d 787) (2016). Thus, "[t]he threshold determination of whether a subsequent agreement entirely superseded a prior agreement is made under state law, without applying the FAA's presumption." *Dasher v. RBC Bank (USA)*, 745 F3d 1111, 1122 (II) (B) (11th Cir. 2014). See *Stewart v. Favors*, 264 Ga. App. 156, 159 (1) (590 SE2d 186) (2003) ("[W]hen deciding whether the parties agreed to arbitrate a certain matter including

arbitrability, courts generally should apply ordinary state-law principles governing the formation of contracts.") (citation and punctuation omitted.). Further, in considering arbitrability a court "is not to rule on the potential merits of the underlying claims. Even if it appears to the reviewing court that the claims asserted are meritless or even frivolous, it must not allow those considerations to interfere with its determination of arbitrability." (Footnotes and punctuation omitted.) *BellSouth Corp. v. Forsee*, 265 Ga. App. 589 (595 SE2d 99) (2004).

With these principles in mind, to determine if an existing contract has been superseded and discharged, the parties must "subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." (Citation and punctuation omitted.) *Hennessy v. Woodruff*, 210 Ga. 742, 744 (1) (82 SE2d 859) (1954). Thus, "the terms of those contracts must completely cover the same subject matter and be inconsistent." *Wallace v. Bock*, 279 Ga. 744, 745-746 (1) (620 SE2d 820) (2005) ("where the parties execute two successive agreements embodying completed negotiations 'on the same subject,' the doctrine of merger applies, and the second agreement supersedes the first."). See *Atlanta Integrity Mtg. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 797 (650 SE2d 359) (2007) ("Under the merger rule, an existing contract is superseded

8

and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract.") (citation and punctuation omitted.)

Here, the AA Agreement is not a successive or inconsistent agreement, but rather part of a series of documents to effect the purchase and transfer of the Cell Phone Maniea franchises. It does not completely subsume the subject matter embodied in the Franchise and Sub-license Agreements, and in fact, instead specifically incorporated those documents by reference. According to the terms of the AA Agreement, its separate parts "together shall constitute one and the same instrument." Moreover, the terms of the AA Agreement are not inconsistent with the Franchise and Sub-license Agreements and thus it does not reflect that the parties intended that the choice of law provision in AA Agreement would supersede arbitration clauses. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59, (115 SCt 1212, 131 LE2d 76) (1995) ("The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.") Morever, "when a court interprets such provisions in an agreement covered by the FAA, [as are the agreements in this case] due regard

9

must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. at 62.

With that being so, the arbitration agreements at issue in this case include a "delegation provision" e.g., an agreement to arbitrate threshold issues concerning the arbitration agreement. The delegation provision clearly assigns responsibility for resolving "whether any specific claim is subject to arbitration at all (arbitrability questions)" to the arbitrator. "[J]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." (Emphasis omitted.) *Losey v. Prieto*, 320 Ga. App. 390, 393 (739 SE2d 834) (2013). Here, the arbitration agreements clearly delegated that responsibility to the arbitrator.

Accordingly,

[t]he trial court did not err by compelling arbitration according to the terms of the agreement. Moreover, since all of the issues in the underlying suit were compelled to arbitration, there was nothing left for the trial court to resolve, and it was not error to dismiss the suit with prejudice[.] The dismissal with prejudice has no effect on a subsequent challenge to the arbitration ruling, which would be a separate action.

10

(Citations omitted.) *Simmons Co. v. Deutsche Fin. Svcs. Corp.*, 243 Ga. App. 85, 90 (2) (532 SE2d 436) (2000).

2. Having so held in Division 1, we need not consider Samaca's remaining enumerations concerning what it contends were erroneous factual findings by the trial court and its failure to strike a reply brief.

*Judgment affirmed. Mercier, J. concurs. McMillian, J., concurs in judgment only.**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a)**.