**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1780. BICKERSTAFF v. SUNTRUST BANK.

A14A1781. SUNTRUST BANK v. BICKERSTAFF.

RAY, Judge.

These companion cases arise from a dispute between SunTrust Bank and one of its customers, Jeff Bickerstaff, Jr., over whether the parties must arbitrate their disagreement over what Bickerstaff contends are usurious bank card overdraft fees. In Case No. A14A1780, Bickerstaff argues that the trial court erred in denying his motion for certification of a class of SunTrust customers who also were charged the fees and in failing to find that SunTrust was barred from enforcing its arbitration provision as to the putative class. In Case No. A14A1781, SunTrust argues that the trial court erred in denying its motion to compel arbitration. For ease of analysis, we

will address Case No. A14A1781 first and Case No. A14A1780 last. As detailed below, we affirm in both cases.

Bickerstaff opened a personal checking account with SunTrust in 2009, after agreeing to the bank's Rules and Regulations for Deposit Accounts, which included a mandatory arbitration provision. In May 2010, in a case not involving Bickerstaff, a federal court determined that SunTrust's mandatory arbitration provision was substantively and procedurally unconscionable under Georgia law. See *In re Checking Account Overdraft Litigation*, 734 F.Supp.2d 1279, 1292 (II) (E) and n. 15 (S.D. Fla. 2010), later overturned in *In re Checking Account Overdraft Litigation, MDL No. 2036*, 459 Fed.Appx. 855, 858-859 (III) (11th Cir. 2012) (finding the arbitration clause conscionable). Approximately one month after the initial federal decision, in June 2010, SunTrust amended its arbitration agreement to allow customers a window of time in which to opt out of arbitration if they sent SunTrust written notice that complied with various requirements. Customers such as Bickerstaff had to opt out by October 1, 2010.

However, despite revising the amendment in June 2010, SunTrust did not actually give Bickerstaff or its other customers notice of this amendment until August 24, 2010. Nonetheless, on July 12, 2010, prior to any notice from SunTrust about the

2

new opt-out provision and prior to the deadline for rejecting arbitration, Bickerstaff filed his complaint. He filed his amended complaint on August 9, 2010, also prior to any notice of the opt out provision and prior to the deadline.

Only after Bickerstaff had filed his complaint did SunTrust print the following non-specific language, which neither references the arbitration clause nor any deadline, in customers' August 2010 monthly account statements:

> An updated version of the 'Rules and Regulations for Deposit Accounts,' which governs your account, is now available and can be obtained at any branch office or at www.suntrust.com/rulesandregulations. All future transactions on your account will be governed by these updated rules and regulations.

(Capitalization omitted.) SunTrust then made the new version of the Deposit Agreement, which included the arbitration opt out and relevant dates, available at its branches and on its Web site. The opt-out provision directed customers to provide

> written notice of your decision so that we receive it at the address listed below by the later of October 1, 2010 or within forty-five (45) days of the opening of your Account. Such notice must include a statement that you wish to reject the arbitration agreement section of these rules and regulations along with your name, address, Account name, Account number and your signature and must be mailed to the SunTrust Bank Legal Department, Attn: Arbitration Rejection, P.O. Box 2848, Mail

3

Code 2034, Orlando, FL 32802-2848. This is the sole and only method by which you can reject this arbitration agreement provision. . . . You agree that our business records will be final and conclusive with respect to whether you rejected this arbitration agreement provision in a timely and proper fashion.[1]

On the first business day after the opt-out deadline of October 1, 2010, SunTrust filed a motion to compel arbitration on October 4, 2010. It is undisputed that neither Bickerstaff nor his counsel knew about the opt-out provision and the October 1, 2010, deadline until SunTrust disclosed the information – after the opt-out had expired – in its motion to compel. The trial court, after a hearing, denied the motion. It is from that denial that the appeal in Case No. A14A1781 arises.

On April 13, 2013, Bickerstaff moved to certify a class of

[e]very Georgia citizen who had or has one or more accounts with SunTrust Bank and who, from July 12, 2006, to the date the [c]ourt certifies the class, (i) had at least one overdraft of $500.00 or less resulting from an ATM or debit card transaction (the "Transaction"); (ii) paid any Overdraft Fees as a result of the Transaction; and (iii) did not receive a refund of those Fees.

---

[1] It is undisputed that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the parties' agreement.

The trial court denied the motion for class certification. The appeal in Case No. A14A1780 arises from this denial.

In the two orders on appeal, the trial court determined that the initial agreement bound Bickerstaff and all SunTrust's customers, and that the later amendment to the arbitration agreement was enforceable and was not unconscionable under Georgia law.

*CASE NO. A14A1781*

1. SunTrust argues that the trial court erred in denying its motion to compel arbitration by (1) finding that Bickerstaff effectively exercised his right to opt out by filing a lawsuit; (2) failing to consider SunTrust's business records regarding whether Bickerstaff timely and properly rejected the arbitration agreement; and (3) finding that any failure on Bickerstaff's part to comply sufficiently with the opt-out provision was excused by what the trial court determined were SunTrust's own "misleading" actions in regard to the opt-out provision.[2]

---

[2] At the outset, we address Bickerstaff's motion to dismiss this appeal. Bickerstaff argues that because we initially granted SunTrust's interlocutory appeal on this matter, then later dismissed it as improvidently granted, that dismissal is either law of the case or res judicata on the issues now raised in A14A1781. First, this Court's dismissal was not an adjudication on the merits and is not res judicata. *Holmes v. Achor Center, Inc.*, 249 Ga. App. 184, 186-187 (1) (547 SE2d 332) (2001); *Henderson v. Justice*, 237 Ga. App. 284, 287 (1) (514 SE2d 713) (1999) (physical

5

The trial court denied SunTrust's motion to compel, reasoning that in filing his complaint, Bickerstaff had substantially complied with the opt-out provisions because all the information required "was communicated to or made readily available to SunTrust's legal department by [Bickerstaff's] pleadings" prior to the opt-out deadline. We agree.

Similar to our review of the grant or denial of a motion for summary judgment, which involves the elimination of all genuine issues of material fact, the standard of review from the grant or denial of a motion to compel arbitration is whether the trial court was correct as a matter of law. *Harris v. SAL Financial Svcs., Inc.*, 270 Ga. App. 230, 231 (606 SE2d 293) (2004). "The construction of an arbitration agreement, *like any other contract*, presents a question of law, which is subject to de novo review." (Footnote omitted; emphasis supplied.) *Wells Fargo Auto Finance, Inc. v. Wright*, 304 Ga. App. 621, 621 (698 SE2d 17) (2010). The Supreme Court of Georgia

precedent only). See *American General Financial Svcs. v. Jape*, 291 Ga. 637, 644, n. 3 (732 SE2d 746) (2012), citing *Phillips Constr. Co. v. Cowart Iron Works*, 250 Ga. 488, 490 (299 SE2d 538) (1983) (recommending that "*trial courts*, except in the clearest cases, certify orders granting or denying such [motions to] stay judicial proceedings pending arbitration") (emphasis supplied). Further, the law of the case rule does not bar this appeal, as it applies only to decisions that resolve an issue, not to issues raised but never ruled upon. See *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001). Bickerstaff's motion to dismiss is denied.

6

has determined that "[t]he [C]ourt will take the contract by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly." (Citation and punctuation omitted.) *Terry v. State Farm Fire & Casualty Ins. Co.*, 269 Ga. 777, 779 (2) (504 SE2d 194) (1998). "If the language of a contract is clear and unambiguous, the terms of the agreement are controlling and an appellate court should look no further to determine the intention of the parties." (Citation omitted.) Id. at 778-779 (2). "The general rule in determining contract compliance is substantial compliance, not strict compliance, and this rule applies to a contract's termination clause as well." (Citation and punctuation omitted.) *Del Lago Ventures, Inc. v. QuikTrip Corp.*, 330 Ga. App.138, 142 (1) (b) (764 SE2d 595) (2014); OCGA § 13-4-20. Here, the arbitration agreement's opt-out provision is equivalent to a termination clause. See generally *Macon Water Auth. v. City of Forsyth*, 262 Ga. App. 224, 225 (585 SE2d 131) (2003).

(a) SunTrust first argues that the trial court erred denying its motion to compel based on its allegedly erroneous finding that, by filing a lawsuit, Bickerstaff effectively opted out of the arbitration agreement. SunTrust essentially argues that Bickerstaff must strictly comply with the arbitration contract and that its filing of the

lawsuit merely equates to "***no*** compliance[.]" (Emphasis in original.) This is incorrect.

Although the arbitration agreement laid out specific requirements that Bickerstaff had to follow to terminate the arbitration agreement,

> [n]evertheless, substantial compliance is the general rule. Strict compliance is the exception, applying to cases concerning termination notices that result in forfeiture of real property rights under a lease or easement, or revocation of a surety. None of these circumstances are present here[.] . . . Moreover, *substantial compliance with notice provisions may suffice as long as the relevant information is communicated*.

(Citations and punctuation omitted; emphasis supplied.) *Del Lago Ventures, Inc.*, supra at 599 (1) (b). "As a rule, any notice requirement must be reasonably construed. And substantial compliance with a notice provision may present an issue for the [trier of fact] if the evidence appears to be 'in the spirit' of the contract provision." (Punctuation and footnote omitted.) *Western Surety Co. v. Dept. of Transp.*, 326 Ga. App. 671, 676 (1) (b) (757 SE2d 272) (2014). The key issue is whether SunTrust had actual notice of the information required by its opt-out clause, including Bickerstaff's intent to litigate rather than arbitrate. See *APAC-Georgia, Inc. v. Dept. of Transp.*, 221 Ga. App. 604, 606 (2) (472 SE2d 97) (1996).

8

The opt-out provision at issue required customers to reject arbitration by providing six pieces of information: (1) name; (2) address; (3) account name; (4) account number; (5) signature; and (6) a statement indicating the account holder was rejecting arbitration. The customer had to provide that information in three specific ways: (1) in writing; (2) mailed to SunTrust's legal department at the Florida address listed above; (3) by October 1, 2010, or within 45 days of opening an account.

It is undisputed that the complaint and amended complaint are in writing, and although they were not mailed to the Florida address, they were successfully served upon SunTrust . Also, it is clear that SunTrust's legal department received them and retained outside counsel, who filed an answer prior to the opt-out deadline. When Bickerstaff filed his complaint, he provided his name; his county and state of residence and his attorneys' addresses; some transaction and overdraft dates and fee percentages related to his account, but no account number; and his attorney's signature. Obviously, the complaints indicated Bickerstaff's intention to litigate.

Further, the record shows that SunTrust had all the information required by the opt-out provision prior to the deadline. In an affidavit prepared in support of SunTrust's motion to compel arbitration and dated September 29, 2010 – *prior* to the October 1, 2010, opt-out deadline – a senior vice president at SunTrust listed

9

Bickerstaff's account name and number and included as an exhibit Bickerstaff's signature card for the account. The affidavit provides that Bickerstaff "was notified by mail that an updated Deposit Agreement was available[,]"and references as an exhibit the account statement that contained the notice. That account statement includes Bickerstaff's address. Further, Bickerstaff's attorneys signed the complaint and amended complaint while acting on his behalf and as his agents.

SunTrust argues that "neither the complaint nor the amended complaint notified SunTrust that [Bickerstaff] wished to opt out of the Arbitration Agreement in its entirety" and that Bickerstaff "could have filed the complaint with the intention of seeing whether SunTrust desired to have his asserted claims resolved by arbitration[,]" yet, in filing the complaint, Bickerstaff unconditionally sought to have the trial court decide these issues, not an arbitrator, necessarily meaning that he was opting out of the arbitration requirement. Further, both SunTrust's Answer and its Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Action demonstrate that SunTrust clearly understood that Bickerstaff desired that *all* of his claims in litigation escape any requirement of arbitration.

Further, all the information required by the opt-out clause – including Bickerstaff's name, address, account name and number and intent to reject arbitration

10

and litigate instead – was timely communicated to or was in SunTrust's possession in a way that substantially complied with the arbitration contract. The signature of Bickerstaff's counsel substantially complies with the signature requirement. See OCGA § 10-6-5 ("[w]hatever one may do himself may be done by an agent"). "Substantial compliance with notice provisions . . . may suffice so long as the contemplated information is communicated." (Footnote omitted.) *Wallick v. Period Homes, Ltd.*, 252 Ga. App. 197, 203 (3) (555 SE2d 863) (2001) (although a contract required written notice, denial of summary judgment to appellant was appropriate where jury could find that oral notice contained the requisite information). The trial court did not err.

(b) SunTrust argues that the trial court erred in failing to consider the bank's business records on the issue of whether Bickerstaff timely and properly rejected the arbitration agreement. SunTrust provides no record citation showing where this argument was raised below or properly preserved for our review, nor does SunTrust cite to any authority in support of its argument, which is not properly presented as a separate enumeration of error in contravention of our Rule 25 (a) (1), (3) and (c) (1), (2). This enumeration is deemed abandoned.

(c) Because of our determination in Division 1 (a) of Case No. A14A1781, we need not reach SunTrust's remaining enumeration of error.

*CASE NO. A14A1780*

2.     Bickerstaff argues that the trial court erred in denying his motion for class certification and in failing to find that SunTrust was barred from enforcing its arbitration clause against customers other than Bickerstaff.

On review of an order denying class certification, "we will consider the factual findings as adopted by the trial court and affirm them unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion." (Punctuation and footnote omitted.) *American Debt Foundation, Inc. v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011). Bickerstaff bears the burden of showing that certification is appropriate. Id.

To obtain class certification, the plaintiffs are required to satisfy all four pre-requisites set forth in OCGA § 9-11-23 (a), and at least one factor in OCGA § 9-11-23 (b). *American Debt. Foundation,* supra. OCGA § 9-11-23 provides:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1)The class is so *numerous* that joinder of all members is impracticable; (2)There are questions of law or fact *common* to the class; (3)The claims or defenses of the representative

12

parties are *typical* of the claims or defenses of the class; and (4)The representative parties will *fairly and adequately protect the interests* of the class.

(Emphasis supplied.) The failure of any one of the OCGA § 9-11-23 factors is sufficient to defeat class certification. *Diallo v. American InterContinental Univ., Inc.*, 301 Ga. App. 299, 306 (3) (687 SE2d 278) (2009). Here, the trial court's order analyzed only the numerosity factor, finding that although Bickerstaff effectively opted out of the agreement for himself by filing suit, he could not do so on behalf of the class; thus, as a class of one, he failed to meet the numerosity requirement.

Bickerstaff argues that the trial court erred in denying his motion for class certification. We find no grounds for reversal.

(a) Bickerstaff argues that in rendering its decision, the trial court erred in applying the federal presumption favoring arbitration. Specifically, he contends that the trial court mistakenly relied on that presumption "in determining the *existence* of an agreement to arbitrate," and that the presumption only applies when determining the *scope* of an agreed-upon arbitration clause. (Emphasis supplied.) SunTrust counters that the trial court "only referenced federal policy favoring arbitration[,]" which is taken into consideration when applying ordinary State law.

13

Here, the trial court determined that the SunTrust customers in Georgia who were assessed overdraft fees during the relevant time period were subject to an enforceable arbitration agreement. Thus, the arbitration amendment did not change the binding nature of the agreement unless and until putative class members had exercised their right to opt-out or the trial court had determined that Bickerstaff could opt out on their behalf.

As the Eleventh U.S. Circuit Court of Appeals stated in *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (II) (B), n. 5 (11th Cir. Fla. 2014),

> the federal policy favoring arbitration is taken into consideration even in applying ordinary [S]tate law. The federal policy favoring arbitration is not, however, the same as applying a presumption of arbitrability. We only apply the presumption of arbitrability to the interpretation of contracts if we have already determined that, under [S]tate law, the parties formed a valid agreement to arbitrate.

(Citation and punctuation omitted.) Pretermitting which standard the trial court used, we will affirm its denial of class certification if right for any reason. *Ardis v. Fairhaven Funeral Home & Crematory, Inc.*, 312 Ga. App. 482, 484, n. 1 (718 SE2d 843) (2011).

14

(b) Bickerstaff next argues that the trial court erred in determining that he was not empowered to reject arbitration on behalf of the class prior to certification.

The trial court, in denying SunTrust's motion to compel arbitration, essentially determined that the arbitration agreement was not enforceable as to Bickerstaff because he had successfully opted out. In its denial of class certification, the trial court analyzed whether the arbitration contract itself permitted Bickerstaff to opt out on behalf of others.

Under 9 U.S.C. § 2,

[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

This provision reflects

both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. The

15

final phrase of § 2, however, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses["] . . . but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

(Citations and punctuation omitted.) *AT&T Mobility, LLC v. Concepcion*, __ U. S. __ (131 S.Ct. 1740, 1745-1746 (II), 179 LE2d 742) (2011). See *Dasher*, supra. "Whether there is a valid agreement to arbitrate is generally governed by state law principles of contract formation, and is appropriate for determination by the court." (Citation omitted.) *Triad Health Mgt. of Ga., III, LLC v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009).

Here, each of the members of the putative class, like Bickerstaff, presumably signed his or her own individual Deposit Agreement contract with SunTrust, which contains the arbitration provision. The Deposit Agreement provides that

[t]hese rules and regulations constitute a contract between *you* and the Bank. . . . *This agreement is for the benefit of, and may be enforced only by, you* and the Bank and their respective successors and permitted transferees and assignees, and *is not for the benefit of, and may not be enforced by, any third party*.

16

(Emphasis supplied.) The agreement also provides that

> *[y]ou* may reject this arbitration agreement provision[.] . . . To reject this arbitration agreement provision, *you* must send the Bank written notice of *your* decision[.] . . . This arbitration agreement provision will apply to *you* and us and to your Account unless *you* reject it by providing proper and timely notice as stated herein.

(Emphasis supplied.) The agreement defines "you" and "your" as the "[d]epositor[,]" which "means the owner of the Account and each person who signs the signature card for the Account or is referenced on the Bank's records as an owner of the Account." Bickerstaff does not argue, nor do we find, any evidence that any member of the putative class is a joint signatory on Bickerstaff's account, or a successor, transferee, or assignee. However, Bickerstaff now proposes to alter the arbitration contracts of the putative class.

In general, "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." (Citations omitted.) *The Standard Fire Ins. Co. v. Knowles*, __ U. S. __ (133 S.Ct. 1345, 1349 (II), 185 LE2d 439) (2013). In order to opt out on a pre-suit basis to satisfy the numerosity requirement, Bickerstaff would have to legally bind class members to a rejection of the arbitration clause – at least until they opted out of the class itself once it was

17

certified. This he cannot do. Further, the Deposit Agreement contract and its arbitration clause prohibit Bickerstaff from altering others' contracts where he is neither a party nor in privity with a party.

"[T]he construction of a contract is a question of law for the court that is subject to de novo review. Where contract language is unambiguous, construction is unnecessary , and the court simply enforces the contract according to its clear terms." (Footnote omitted.) *Losey v. Prieto*, 320 Ga. App. 390, 390-391 (739 SE2d 834) (2013). See also 9 U.S.C. § 2. Here, the contract terms are plain: Bickerstaff was not a privy nor a party to any contract between SunTrust and putative class members, and each individual account holder had to opt out for himself or herself. Nor were Bickerstaff or the putative class members beneficiaries of one another's contracts with SunTrust such that Bickerstaff could enforce or alter those contracts. See *Walls, Inc. v. Atlantic Realty Co.* 186 Ga. App. 389, 390-392 (1) (367 SE2d 278) (1988) (where indemnification contract specifically provided that the contract was solely for the benefit of the signatories, there could be no third-party beneficiaries). See also *Southeast Grading, Inc. v. City of Atlanta*, 172 Ga. App. 798, 800 (1) (324 SE2d 776) (1984) (for a third party to have standing to enforce a contract under OCGA § 9-2-20, the contract must clearly show it was intended for the third party's benefit). The

18

contract language clearly states that the agreement "is not for the benefit of, and may not be enforced by, any third party." "Given this explicit language, the intent of the parties that no others benefit from the [arbitration opt-out provision] could scarcely have been more clearly and unambiguously expressed." (Citation omitted.) *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (1) (629 SE2d 22) (2006) (finding that third party could not benefit from contract containing this language: "no other person shall have any right, benefit or obligation under this Agreement as a third party beneficiary or otherwise") (punctuation omitted).

The cases Bickerstaff cites for the proposition that plaintiffs may satisfy preconditions for suit in a class action are distinguishable, and do not demand or even recommend a different result, because none of them implicate the type of contractual language at issue here. See *Schorr v. Countrywide Home Loans, Inc.*, 287 Ga. 570, 570-571, 573 (697 SE2d 827) (2010), *Barnes v. City of Atlanta*, 281 Ga. 256, 257-258 (637 SE2d 4) (2006), *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 374 (1) (a) (634 SE2d 123) (2006) (all involved statutory language that did not require each individual to act for himself or herself); and *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 720, 726-728 (1) (698 SE2d 19) (2010) (named plaintiff could provide written notice on behalf of other insureds where, inter alia, appellate court found that

19

where insurance policy made refunds contingent on written notice provided "either by or *on behalf of* the insured," and where written notice was not a condition precedent to a claim) (emphasis supplied).

Two cases applying the law of other jurisdictions also address the issue, but they are not binding authority and make no factual findings about whether there were contractual provisions, as in the instant case, that specifically limit action under the contract to the parties. Compare *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336-1337 (11th Cir. 1984) and *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 704 (IV) (Fla. Dist. Ct. App. 2000) (both allowing named plaintiff, a cruise line passenger, to provide contractual notice on behalf of other passengers).

Here, the contractual language itself prohibits Bickerstaff from opting out on behalf of others. Thus, as the trial court determined, he cannot satisfy the numerosity requirement of OCGA § 9-11-23. Because of this, we need not analyze the remaining factors. We affirm the trial court.

3. Bickerstaff's final enumeration appears to argue that – independent of Bickerstaff himself – the trial court erred in finding that the arbitration agreement was enforceable as to all other affected SunTrust customers standing alone because they never assented to the agreement and because SunTrust by its own conduct waived its

right to require timely compliance with the opt-out provision. Our decision in Division 2 affirming the trial court's denial of class certification moots this contention, as we have no ability to analyze claims of nonparties unconnected to Bickerstaff's own. See *Standard Fire*, supra at 1349 (II).

*Judgment affirmed. McFadden, J., concurs and Andrews, P. J., concurs in judgment only*.