**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 20, 2025**

# In the Court of Appeals of Georgia

A24A1700.  SUNTRUST  BANK  v.  BICKERSTAFF  et  al.;
A24A1701. BICKERSTAFF et al. v. SUNTRUST BANK;
A24A1702. SUNTRUST BANK v. BICKERSTAFF et al.

PADGETT, Judge.

These related appeals arise from a complaint filed by Jeff Bickerstaff, Jr.,[1] a customer of SunTrust Bank ("SunTrust"). On July 12, 2010, Bickerstaff filed a complaint against SunTrust on behalf of himself and all others similarly situated asserting that SunTrust's overdraft fees constitute unlawful interest charges and

---

[1] Jeff Bickerstaff, Jr. passed away in 2014. In 2015, the Supreme Court corrected the style of the case to read as follows: *Ellen Rambo Bickerstaff v. SunTrust Bank*. In March 2023, the Court entered an Order substituting Charles Daniel Bickerstaff as Plaintiff and as Class Representative and the case was styled as: *Charles Daniel Bickerstaff, as Administrator of the Estate of Jeff Bickerstaff, Jr., on behalf of himself and others similarly situated, Plaintiff v. SunTrust Bank, Defendant.*

raising claims for violation of Georgia's civil and criminal usury laws (OCGA §§ 7-4-2 and 7-4-18, respectively), money had and received, and conversion.

*Factual background and procedural history*

This is the fifth appearance of this case on appeal. In *Bickerstaff v. SunTrust Bank*, 332 Ga. App. 121, 122 (770 SE2d 903) (2015) ("*Bickerstaff I*"), this Court affirmed the trial court's order denying SunTrust's motion to compel arbitration and Bickerstaff's motion for class certification. Our Supreme Court granted Bickerstaff's petition for certiorari review and *Bickerstaff v. SunTrust Bank*, 299 Ga. 459 (788 SE2d 787) (2016) ("*Bickerstaff II*") followed. In *Bickerstaff II,* the Supreme Court reversed our decision, holding "the terms of the arbitration rejection provision of SunTrust's deposit agreement [did] not prevent Bickerstaff's class action complaint from tolling the contractual limitation for rejecting that provision on behalf of all putative class members until such time as the class may be certified and each member makes the election to opt out or remain in the class." 299 Ga. at 470.[2] Thereafter, in *Bickerstaff v. SunTrust Bank*, 340 Ga. App. 43 (796 SE2d 9) (2017) ("*Bickerstaff III*"), this Court

---

[2] SunTrust filed a petition for writ of certiorari to the United States Supreme Court, which was denied. See *SunTrust v. Bickerstaff*, 580 U.S. 1020, 137 SCt 571 (196 LE2d 447) (2016).

remanded the case to the trial court to rule on the issue of whether SunTrust waived its right to compel arbitration against putative class members other than Bickerstaff if and when a class was certified. 340 Ga. App. at 44. The trial court ultimately found that all the requirements of OCGA § 9-11-23 were met and certified the class as follows:

> [e]very Georgia citizen who had or has one or more accounts with SunTrust Bank and who, from July 12, 2006, to October 6, 2017 (i) had at least one overdraft of $500.00 or less resulting from an ATM or debit card transaction (the "Transaction"); (ii) paid any Overdraft Fees as a result of the Transaction; and (iii) did not receive a refund of those Fees.

SunTrust appealed, and in *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794 (824 SE2d 717) (2019) ("*Bickerstaff IV*"), this Court held the trial court did not abuse its discretion in certifying the class. 349 Ga. App. at 804.

After the close of discovery, the trial court issued an omnibus order in March 2024 deciding several of the parties' various motions. The trial court denied SunTrust's motion to dismiss for insufficiency of process, denied in part SunTrust's motion to compel arbitration as to certain account holders and class members, but

3

granted the motion to compel arbitration as to depositors who closed their accounts before June 1, 2010, granted SunTrust's motion to modify the class definition by adding language that a class member is: "[a] person who was a Georgia citizen on the date Plaintiff filed this Complaint, and has thereafter continuously remained through October 6, 2017, a citizen of Georgia . . . [,]" denied SunTrust's motion for summary judgment on the question of whether overdraft fees constituted interest, found that 2014 legislative changes to the usury statute did not apply to this litigation, denied SunTrust's motion for summary judgment on the issue of intent, granted SunTrust's motion for summary judgment on Bickerstaff's claims for criminal usury, and granted SunTrust summary judgment as to claims that accrued before July 12, 2009, holding they were barred by the one-year statute of limitations for usury. These appeals followed.[3]

In Case Nos. A24A1700 and A24A1702, SunTrust argues that the trial court erred in: (1) denying SunTrust's motion to dismiss for insufficient service of process

---

[3] Case No. A24A1700 is SunTrust's appeal from portions of the March 2024 omnibus order. Case No. A24A1701 is Bickerstaff's appeal from the same order. Case No. A24A1702 is SunTrust's cross-appeal from Bickerstaff's appeal. We granted SunTrust's unopposed motion to consolidate Case Nos. A24A1700 and A24A1702, which are substantively the same.

; (2) denying its motion to compel two groups of class members to arbitration ; (3) denying its motion for summary judgment on the question of whether its overdraft coverage is a loan or advance of money ; (4) denying SunTrust summary judgment on the question of whether its overdraft fees were interest ; (5) holding that a usury plaintiff "need not prove the defendant's intent to violate the law, and therefore, denying SunTrust summary judgment on the question of whether it intended to violate the law by offering overdraft coverage ; and (6) denying SunTrust summary judgment as to claims arising after the 2014 amendment to Georgia's usury law.

In Case No. A24A1701, Bickerstaff argues that the trial court erred in: (1) changing the class definition to require class members to have been Georgia citizens continuously from the date the complaint was filed to October 6, 2017 ; (2) entering summary judgment in favor of SunTrust and barring all claims accruing before July 12, 2009, due to the usury statute of limitations ; and (3) compelling class members who closed their accounts before June 1, 2010, to arbitrate. For the reasons that follow, we affirm in part, and reverse in part.

*Case Nos. A24A1700 and A24A1702*

1. SunTrust argues the trial court failed to enforce OCGA § 9-11-4's jurisdictional requirement that a summons must be issued and signed by the clerk. SunTrust claims it was served with a proposed summons form eFiled by Bickerstaff's counsel and containing a blank signature line. "A trial court's ruling on a motion to dismiss a complaint for insufficient service of process will be upheld on appeal absent a showing of an abuse of discretion. Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them." *Griffin v. Stewart*, 362 Ga. App. 669, 669 (870 SE2d 3) (2022) (citations and punctuation omitted). OCGA § 9-11-4 (a) and (b) provide "[u]pon the filing of the complaint, the clerk shall . . . issue a summons [and] . . . [t]he summons shall be signed by the clerk." "The issuance of a summons signed by the clerk is a necessary part of acquisition of jurisdiction." *Diaz v. First Nat. Bank,* 144 Ga. App. 582, 583 (1) (241 SE2d 467) (1978).

Here, as noted by the trial court, the summons is stamped "Efiled," dated July 12, 2010, and bears the name of Mark Harper, Clerk. And according to State Court of Fulton County Local E-Filing Rule 2-106, "[e]very pleading, document, and instrument electronically filed or served shall be deemed to have been signed by the

6

Judge, clerk, attorney or declarant and shall bear the typed name, address, telephone number and Bar number of a signing attorney." The trial court ruled that the summons was deemed to be electronically signed by the Clerk when filed. Further, SunTrust has been involved in this litigation for over 14 years. "[W]here it is clear that the defendant has been served, has appeared and has been heard on the merits of the controversy, the proceeding should not be vitiated by objections going merely to the form of process." *See Tyree v. Jackson*, 226 Ga. 690, 693 (1) (177 SE2d 160) (1970). For these reasons, we find no abuse of discretion in the trial court's ruling on this issue.

2. Next, SunTrust argues the trial court erred by failing to compel two groups of class members to arbitrate. "This Court reviews the grant or denial of a motion to compel arbitration de novo to see if the trial court's decision is correct as a matter of law; but we defer to the trial court's factual findings unless they are clearly erroneous." *Smith v. Adventure Air Sports Kennesaw, LLC*, 357 Ga. App. 1, 1 (849 SE2d 738) (2020) (citations and punctuation omitted). SunTrust argues the trial court should have compelled class members who opened their account or were first charged an overdraft fee after July 12, 2010, and class members subject to different arbitration

agreements than Bickerstaff, to arbitrate. "Under the 'law of the case' doctrine, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." *Southern States Chem. v. Tampa Tank & Welding*, 316 Ga. 701, 716(3) (888 SE2d 553) (2023) (citation and punctuation omitted). In *Bickerstaff II*, our Supreme Court held Bickerstaff's filing of the complaint tolled the time to opt out of arbitration on behalf of *all* putative class members. 299 Ga. at 468-469 (1) (b). The Supreme Court did not limit its holding to those depositors whose arbitration provisions were identical to Bickerstaff's. The putative class covered by the Supreme Court's ruling in *Bickerstaff II* included depositors who paid overdraft fees through the date of class certification, including under amended deposit agreements with different arbitration provisions than Bickerstaff's. Therefore, we cannot say the trial court erred by denying SunTrust's motion to compel arbitration as to these two groups under the law of the case doctrine.

3. SunTrust argues the trial court erred in determining that SunTrust's overdraft coverage "constitutes an advance of funds to its depositors." SunTrust cites to *Ruth v. Cherokee Funding LLC*, 304 Ga. 574 (820 SE2d 704) (2018), to argue the

8

overdraft program is not a "loan" or "advance" because there can be no loan or advance where "the obligation to repay is only contingent and limited." Id. at 579 (3). In that case, the repayment of the funds was contingent on the party winning their lawsuit. Id. at 574-575 (1). In this case, SunTrust's overdraft program is not similarly contingent, but is an advance of funds to cover withdrawals for which SunTrust expected repayment. SunTrust's internal procedures defined an overdraft as "the extension of unsecured credit . . ." Again, we cannot say the trial court erred in concluding SunTrust's overdraft program constituted an advance of funds. See *West v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 342, 345-346 (2) (a) (254 SE2d. 392) (1979) (bank may recover the amount of an overdraft from a depositor in the same manner in which it could recover an amount loaned to a customer in the regular course of business).

4. SunTrust argues the trial court erred in determining its overdraft fees are subject to the usury law because the flat fee charged when the overdraft is processed is not interest. SunTrust claims its overdraft fees do not fall within Georgia's civil usury statute which defines interest as "a charge for the use of money computed over the term of the contract at the rate stated in the contract or precomputed at a stated

9

rate on the scheduled principal balance or computed in any other way or any other form," OCGA § 7-4-2 (A) (3), because the fee is a flat fee and not based on the time value of money.

> To determine if a contract is usurious, we critically examine the substance of the transaction, regardless of the name given it, or, stated another way, the theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance.

*BankWest, Inc. v. Oxendine,* 266 Ga. App. 771, 776 (1) (598 SE2d 343) (2004) (citation and punctuation omitted). "Where a transaction is not per se usurious, if it is claimed to be a device to cover up a charge of usury, a question of fact is raised as well as a question of law and it should be submitted to a jur*y." Knight v. First Fed. Sav. & Loan Assn., Savannah*, 151 Ga. App. 447, 452 (2) (260 SE2d 511) (1979). Where "there be doubt as to whether the transaction is a cover for usury or a perfectly fair one authorized by law, then it is a question for the jury to determine, from all the facts and circumstances of the case, whether the transaction disclosed is one bona fide, in the ordinary course of business. . . ." Id. at 453 (2) (citation and punctuation omitted).

Here, the trial court did not err in determining that whether overdraft fees constituted interest is a question of fact for the jury.

5. SunTrust argues the trial court erred in denying it summary judgment because it did not intend to violate the usury law. "On appeal from the grant or denial of summary judgment, we apply a de novo standard of review." *Ga. Cash America, Inc. v. Greene*, 318 Ga. App. 355, 358 (2) (734 SE2d 67) (2012) (citation and punctuation omitted). "[T]he moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d. 474) (1991). "To constitute usury in this state it is essential that there be, at the time the contract is executed, an intent on the part of the lender to take or charge for the use of money a higher rate of interest than that allowed by law." *Dorfman v. Briah Assoc.*, 160 Ga. App. 359, 360 (287 SE2d 75) (1981) (citation and punctuation omitted). Generally, the question of intent and the truth of the transaction is a jury question. Id. Here, the trial court correctly denied summary judgment and ruled intent was to be determined by the jury. Bickerstaff pointed to SunTrust's internal documents including an email that set forth the minimum

11

amounts for paid items for which a $35 overdraft fee would not exceed the interest allowed under the usury statute for different time periods. Further, Bickerstaff pointed to several internal documents in which SunTrust defined overdraft fees as "an extension of unsecured credit" and considered the overdraft fees "critical to SunTrust's profitability." SunTrust argues it believed the overdraft program was lawful in light of a 2013 Georgia Department of Banking and Finance Order and the 2014 amendment to the usury law. We cannot say the trial court erred in determining there is a genuine issue of material fact as to whether SunTrust acted with usurious intent.

6. SunTrust argues the trial court erred in denying SunTrust summary judgment as to claims that arose after the 2014 amendment to the usury statute. We agree.

In 2014, the Georgia Legislature amended the usury statute by adding OCGA § 7-4-2 (d), which provides:

> Notwithstanding the foregoing, fees and other charges agreed upon by a financial institution and depositor, as defined in Code Section 7-1-4, in a written agreement governing a deposit, share, or other account, including but not limited, to overdraft and nonsufficient funds, delinquency or default charges, returned payment charges stop payment

12

charges or automated teller machine charges, shall not be considered interest.

The legislature clarified its intent was not to effect the law applicable to litigation pending as of February 19, 2014. See Ga. L. 2014, pp. 213-214, §2. However, any overdraft fees assessed after April 15, 2014, the law's effective date, could not be determined to be usurious because the legislature determined overdraft fees shall not be considered interest. Individuals who incurred an overdraft fee after April 15, 2014, could not bring a claim on their own. This Court has stated an individual may not do indirectly what they would not have been permitted to do directly. See *Speer, Inc. v. Manis*, 164 Ga. App. 460, 460 (297 SE2d 374) (1982) (citation and punctuation omitted). Therefore, an individual who incurred an overdraft fee after April 15, 2014, could not sue SunTrust directly for violations of the usury law because the law was clear at that time that overdraft fees did not constitute interest. OCGA § 7-4-2 (d). Further, after the amendment SunTrust could not have had the requisite intent to charge interest in an amount that violated the usury statute because the overdraft fees were no longer considered interest. Therefore, the trial court erred in denying SunTrust summary judgment as to claims that arose after the 2014 amendment.

7. Bickerstaff argues the trial court erred in modifying the class definition by inserting a continuous-citizenship requirement.

> The trial court is vested with broad discretion to decide whether to certify a class, and absent an abuse of that discretion, we will not disturb the trial court's decision. Implicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation. Thus, we will affirm the trial court's factual findings unless they are clearly erroneous. Under the clearly erroneous test, factual findings must be affirmed if supported by any evidence.

*Atlanta Postal Credit Union v. Holiday*, 367 Ga. App. 168, 175 (2) (885 SE2d 196) (2023) (citations and punctuation omitted). "It bears emphasis that certification orders are 'inherently tentative,' and the trial court retains jurisdiction to modify or even vacate them as may be warranted by subsequent events in the litigation." *Fortis Ins. Co.* v. *Kahn*, 299 Ga. App. 319, 326 (4) (683 SE2d 4) (2009) (citation and punctuation omitted). Following *Bickerstaff II*, upon remand the trial court found that all of the requirements of OCGA § 9-11-23 were met and certified the class as follows:

> Every Georgia citizen who had or has one or more accounts with SunTrust Bank and who, from July 12, 2006, to October 6, 2017 (i) had

at least one overdraft of $500.00 or less resulting from an ATM or debit card transaction ("the Transaction"); (ii) paid any Overdraft Fees as a result of the Transaction; and (iii) did not receive a refund of those Fees.

On appeal in *Bickerstaff IV*, this Court concluded the trial court did not abuse its discretion in certifying the class. *Bickerstaff IV,* 394 Ga. App. at 804. After *Bickerstaff IV,* the parties engaged in years of discovery. Upon SunTrust's renewed motion to modify the class definition, the trial court granted the motion in part to provide "clarity" to the definition by specifying what is required of citizenship as:

> Every **person who was a Georgia citizen on the date Plaintiff filed this Complaint, and has thereafter continuously remained through October 6, 2017, a citizen of Georgia** who had or has one or more accounts with SunTrust Bank and who, from July 12, 2006 to October 6, 2017 (i) had at least one overdraft of $500.00 or less resulting from an ATM or debit card transaction (the "Transaction"); (ii) paid any Overdraft Fees as a result of the Transaction; and (iii) did not receive a refund of those fees.

(emphasis supplied).

The trial court explicitly stated that "the Court does not believe it is necessary to modify the class definition, because the Class Definition was not altered."

Bickerstaff argues that a modification requires a "new event," but this Court has noted that certification orders are "inherently tentative, and the trial court retains jurisdiction to modify or even vacate them as may be warranted by subsequent events in the litigation." *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 378 (2) (c) (634 SE2d 123) (2006) (citations and punctuation omitted). Further, under OCGA § 9-11-23 (c) (1) a "[class-certification] order under this subsection may be conditional, and may be altered or amended before the decision on the merits." Therefore, if the trial court "modified" the class definition, it came after a subsequent event in the litigation — the parties engaging in discovery — and before a decision on the merits. As a result, we can not say the trial court abused its discretion in "clarifying" the class definition. See *J. M. I. C. Life Ins. Co.*, 280 Ga. App. at 378 (2) (c).

8. Bickerstaff argues the trial court erred by barring all claims accruing before July 12, 2009, including his claims for conversion and money had and received,[4] on the

---

[4] Conversion has a four-year statute of limitation period. See OCGA § 9-3-32 ("Actions for the recovery of personal property, or for damages for the conversion . . . of the same, shall be brought within four years after the right of action accrues[.]"); Money had and received has a four-year statute of limitation period. See OCGA § 9-3-25; see also *Macomber v. First Union Nat. Bank of Ga.*, 212 Ga. App. 57, 58 (1) (441 SE2d 276) (1994) (the statute of limitation in an action for money had and received is four years).

basis that those claims are governed by the one-year statute of limitation period for usury. We agree.

The trial court determined the one-year limitation period for usury was applicable to Bickerstaff's common law claims for conversion and money had and received. The trial court concluded the class cannot avoid the usury limitation by alleging common law claims that are based solely on alleged usurious interest. "Under Georgia law, plaintiffs are permitted to pursue alternative theories of relief based on causes of action with different elements, even when those causes of action arise from the same underlying conduct." *Titshaw v. Geer*, 320 Ga. 128, 138 (3) (c) (907 SE2d 835) (2024). Therefore, to determine what statute of limitation period applies we must first determine the elements of each claim.

> There are four requisites of every usurious transaction: (1) A loan or forbearance of money, either express or implied. (2) Upon an understanding that the principal shall or may be returned. (3) And that for such loan or forbearance a greater profit than is authorized by law *shall be paid or is agreed to be paid*. (4) That the contract was made with an intent to violate the law.

17

*Knight,* 151 Ga. App. at 449 (1) (citations and punctuation omitted, emphasis in original). By contrast, "[a] claim for money had and received contains the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Wilson v. Wernowsky*, 355 Ga. App. 834, 843 (2) (b) (846 SE2d 101) (2020) (citation and punctuation omitted).

"Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *City of Atlanta v. Hotels.com, L. P.*, 332 Ga. App. 888, 890-891 (2) (a) (775 SE2d 276) (2015) (citation and punctuation omitted). "To establish a claim for conversion, a plaintiff must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Id. at 891 (2) (a) (citation and punctuation omitted).

Claims for usury, money had and received, and conversion are each different causes of action that include different elements. The trial court determined that

because a finding of usury was a condition precedent to prevailing on the claims for money had and received and conversion, then the statute of limitations for usury applied to all claims. This is not true. Each claim must be analyzed separately to determine when the right of action accrued for that particular claim. See *Titshaw*, 320 Ga. at 139 (3) (c). While Bickerstaff has conceded that in order to prevail on the common law claims, there must be a finding of usury, this does not mean the usury statute of limitations automatically applies to his conversion and money had and received claims. Our Supreme Court has stated "which statute of limitation applies to a claim turns on the nature of the cause of action at issue." Id. The correct statute of limitation period is the period defined for conversion and money had and received. Therefore, the trial court erred in concluding that the one-year statute of limitations period for usury barred all claims that accrued before July 12, 2009.

9. Next, Bickerstaff argues the trial court erred by compelling arbitration for depositors who closed their accounts before June 1, 2010. Bickerstaff argues SunTrust waived its arbitration arguments by failing to raise them in prior appeals, that the trial court's ruling contradicts the law of the case in *Bickerstaff II*, and that SunTrust failed

to comply with its own contractual requirements for compelling arbitration. We disagree.

"This Court reviews the grant or denial of a motion to compel arbitration de novo to see if the trial court's decision is correct as a matter of law; but we defer to the trial court's factual findings unless they are clearly erroneous." *Smith v. Adventure Air Sports Kennesaw, LLC,* 357 Ga. App. 1, 1 (849 SE2d 738) (2020) (citations and punctuation omitted).

So viewed, the record shows that when Jeff Bickerstaff opened his account with SunTrust in 2009, SunTrust's Rules and Regulations for Deposit Accounts did not permit depositors to opt out of arbitration.[5] On June 1, 2010, SunTrust revised the deposit agreement to allow then-existing depositors to opt out of arbitration by October 1, 2010, or within 45 days of opening their account, whichever was later. Bickerstaff first argues SunTrust waived all of its arbitration arguments by failing to raise them in *Bickerstaff II*. In *Bickerstaff III*, this Court determined the issue of whether SunTrust waived a right to compel arbitration against putative class members

---

[5] The October 2009 version of the Deposit Agreement contained a limited opt-out provision permitting new depositors to reject arbitration within 45 days of opening their account, but no individuals who otherwise met the class definition opted out of arbitration in that period.

other than Bickerstaff had not been ruled on. See *Bickerstaff III*, 340 Ga. App. at 44. Here, Bickerstaff argues this case is like *Pinkerton & Laws Co. v. Robert & Co. Assoc.*, 129 Ga. App. 881 (201 SE2d 654) (1973). In *Pinkerton,* this Court held a party was barred from arguing an indemnity agreement was invalid on another ground than was argued and decided in the prior appeal. 129 Ga. App. at 882 (1). *Pinkerton* is distinguishable from this case because the issue of whether SunTrust waived its right to compel arbitration against members other than Bickerstaff had never been ruled on by the trial court and thus could not have been argued on appeal. See *CDP Event Svcs., Inc. v. Atcheson*, 289 Ga. App. 183, 187 (2) (656 SE2d 537) (2008) (explaining that "where the trial court has not ruled on an issue, we will not address it").

Next, Bickerstaff argues the trial court's ruling violated the law of the case as established in *Bickerstaff II.* Bickerstaff argues the putative class members the Supreme Court discussed in *Bickerstaff II* included depositors who closed their accounts before June 1, 2010. This argument is unpersuasive. The trial court, in granting SunTrust's motion to compel, determined "[d]epositors who closed their accounts prior to June 1, 2010 never had the contractual right to opt out of arbitration." The Supreme Court's ruling in *Bickerstaff II* explicitly stated

21

Bickerstaff's complaint tolled the time for "existing depositors" to opt out of arbitration. See *Bickerstaff II*, 299 Ga. at 469 (2). The record shows depositors who closed their account before June 1, 2010, never had the contractual right to opt out of arbitration. Depositors who closed their account before June 1, 2010, could not have been "existing depositors" when Bickerstaff filed his complaint. Therefore, we cannot say as a matter of law, the trial court erred in compelling depositors who closed their accounts prior to June 1, 2010, to arbitration.

Lastly, Bickerstaff argues SunTrust failed to comply with its own Deposit Agreement by failing to demand Bickerstaff's claim be submitted to arbitration within 90 days of his amended complaint. We disagree. Bickerstaff concedes the Deposit Agreement states "[a] demand that a Claim be submitted to arbitration may be made before the initiation of any legal proceeding or within ninety (90) days following the service of a new or amended complaint." Bickerstaff filed his complaint on July 12, 2010, and SunTrust answered and moved the trial court to order Bickerstaff to arbitration within the 90 day period. Therefore, we see no error in the trial court's ruling compelling arbitration for this group of depositors.

10. *Conclusion*

In conclusion, we affirm the trial court's ruling: 1) denying SunTrust's motion to dismiss for insufficient service of process; 2) denying SunTrust's motion to compel arbitration for class members who opened their account or were first charged an overdraft fee after July 12, 2010, and class members subject to different arbitration agreements than Bickerstaff; 3) concluding SunTrust's overdraft program constituted an advance of funds; 4) concluding that the question of whether overdraft fees constituted interest was a question of fact for the jury to determine; 5) denying SunTrust's summary judgment and determining intent was a question to be determined by the jury; 6) clarifying the class definition by inserting a continuous-citizenship requirement; and 7) compelling depositors who closed their accounts prior to June 1, 2010, to arbitration.

We reverse the trial court's ruling: 1) denying SunTrust's summary judgment as to claims that arose after the 2014 amendment to Georgia's usury law and 2) concluding the one-year limitation period for usury applied to Bickerstaff's common law claims for conversion and money had and received.

*Judgment affirmed in part; reversed in part. Dillard, P. J., and Brown, J., concur.*