**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 1, 2026**

# In the Court of Appeals of Georgia

A26A0694. DAWON AND COMPANY USA, LLC v. JOONWOO SOLUTIONS, LLC.

BARNES, Presiding Judge.

We granted this interlocutory appeal to consider whether the trial court erred when it denied defendant Dawon and Company USA, LLC ("Dawon")'s motion to dismiss and to compel arbitration in this dispute arising from the construction of an electric vehicle battery facility in Bartow County. On appeal, Dawon argues that the trial court erred because the parties' so-called "second contract" was not separate from and did not supersede their first, which contained an arbitration provision. We agree and reverse.

As the Georgia Supreme Court has noted, and "because . . . an incorrect determination that a dispute is not subject to arbitration may cause the parties

unnecessary expense and delay," trial courts should, "except in the clearest cases, . . . certify orders denying a motion to compel arbitration." *Am Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 644 n. 3 (732 SE2d 746) (2012) (citation modified). "[W]e review de novo a trial court's order granting or denying a motion to compel arbitration," but "the factual findings on which the ruling is based . . . will not be overturned unless clearly erroneous." *C. R. of Thomasville, LLC v. Hannaford*, 363 Ga. App. 581, 582 (871 SE2d 679) (2022) (citation modified)."The party seeking arbitration bears the burden of proving the existence of a valid and enforceable agreement to arbitrate[,]" and the question whether there is a valid agreement to arbitrate is "a matter of contract . . . generally governed by state law principles of contract formation[.]" Id.

The record shows that in January 2024, plaintiff Joonwoo Solutions, LLC and Dawon entered into a written "service agreement" by which Joonwoo would perform certain construction work on the battery facility for $6.8 million. This first agreement contained the following provision:

> With the exception of any third party claim (impleader) asserted by Dawon against the SUBSUBCONTRACTOR [Joonwoo], if at any time any dispute, claim or controversy should arise between Dawon and [Joonwoo] *with respect to any matter or thing arising out of or related to, or involved in any matter with this Agreement or with the construction project,*

which dispute, claim or controversy is not controlled or determined by the dispute resolution procedures of the Subcontract, then such dispute, controversy of claim shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act. . . . This obligation to arbitrate survives any termination of this Agreement under other provisions thereof.

(Emphasis supplied.) The agreement also provided that in the event of Joonwoo's default, it "agree[d] to pay Dawon such reasonable attorney's fees and related costs as [it] may expend therein." In a section entitled "Changes," the agreement stated that the parties would not change the terms of the contract without a written order. That portion of the agreement further stated that the "Parties acknowledge that no course of conduct or dealing between the Parties shall serve as a basis for any variation of the requirements of the Agreement[.]"

On August 26, 2024, the parties entered into a so-called "second agreement" clarifying that Dawon would pay $1.4 million of the agreed amount by September 4, 2024. The second agreement, which was executed in Korean, also stated that Joonwoo would "adhere to the schedule for the designated section works by August 31" and

and would "make every effort to complete any defective or unfinished works by the project's conclusion." Both parties signed this document.

In February 2025, however, after conflicts arose over the work and payment, Joonwoo filed this action against Dawon and other defendants, alleging that the project had run into significant delays and that Dawon was indebted to it for more than $2 million. Joonwoo alleged that under the August 26 agreement, Dawon was required to pay Joonwoo $1.4 million and that this agreement, which amounted to a change order, concerned work that was outside the scope of the original agreement. Joonwoo conceded that the "full terms of repayment for that work were to be agreed upon later." Joonwoo set out counts for breach of contract based on the agreements, along with unjust enrichment and quantum meruit.

In May 2025, Dawon filed a motion to dismiss and to compel arbitration, attaching the January 2024 service agreement and arguing that it contained a mandatory arbitration clause which covered all disputes between it and Joonwoo arising from the project. According to Dawon, although it had terminated the agreement in December 2025 due to Joonwoo's material breaches, the obligation to arbitrate survived that termination. Thus, Dawon reasoned, dismissal of the lawsuit

was appropriate, along with recovery of the attorney fees expended in enforcing the arbitration provisions of the agreement.

Joonwoo responded to the dismissal motion, arguing that the dispute between it and Dawon stemmed from three separate agreements. Joonwoo claimed that after executing the first agreement, the parties entered into the second agreement, which did not reference the original agreement and was therefore independent of it. Furthermore, Joonwoo argued, the parties then entered a third agreement, which was not reduced to writing and concerned custodial services. Joonwoo claimed that the arbitration agreement did not apply to it because it was a "subsubcontractor" under the original agreement.

The trial court held a hearing, after which it found that Joonwoo's claims related solely to the August 2024 second agreement. The trial court stated that on the hearing date, Joonwoo filed a Second Amended Complaint, which removed portions of the complaint which had been based on the parties' original January 2024 agreement. The court then found that the second agreement did not contain an arbitration clause and did not incorporate by reference the original agreement. Therefore, the trial court denied Dawon's motion to dismiss, noting, however, that

it was not ruling on whether claims in the First Amended Complaint made under the original agreement were subject to arbitration. The court explicitly limited its ruling to Joonwoo's claims under the second agreement. The trial court then certified its ruling for review, and we granted Dawon's timely application.

On appeal, Dawon repeats its argument that the parties' dispute is subject to arbitration.[1]

The parties' first agreement was a six-page agreement accompanied by seventeen appendices, which addressed the scope and quality of the work, insurance coverage, the construction time schedule, and the timing and manner of payment. The parties' second agreement, executed in August 2025, consisted of a one-page document written in Korean. Though the parties' translations of this document differ slightly, both versions of the second agreement are entitled "Agreement on Additional Cost Handling for S-JV Project." Both versions of the agreement also provided that Joonwoo would adhere to the schedule for the designated work by August 31 and make a good faith effort to complete the work by the project's end. Neither version of the second agreement describes the nature of the work that Joonwoo is to perform,

---

[1] Dawon's motion to strike Joonwoo's brief is denied.

addresses the many issues covered by the original agreement, or mentions arbitration or dispute resolution.

Given the abbreviated nature of the parties' second agreement, the trial court erred when it concluded that the second agreement was not subject to the arbitration provisions of the first agreement. "[T]o determine if an existing contract has been superseded and discharged, the parties must subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." *Samaca, LLC v. Cellairis Franchise*, 345 Ga. App. 368, 372 (1) (813 SE2d 416) (2018) (citation modified). "Thus, terms of those contracts must completely cover the same subject matter and be inconsistent." Id.; see also *Atlanta Integrity Mtg. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 797 (650 SE2d 359) (2007) ("Under the merger rule, an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract.") (citation modified). The second agreement did not supersede the first agreement and was not "separate" from it because, as contemplated by the first, the second "[arose] out of or [was related to . . . or involved in any matter with . . . the

construction project," such that any "dispute, claim or controversy is not controlled or determined by the dispute resolution procedures" of any other agreement.

In short, the second agreement here was not inconsistent with the original agreement, nor did it begin to approach the broad scope of that agreement. Rather, the second agreement concerned only cost and scheduling adjustments, and did not address dispute resolution at all. Because the second agreement thus did not cover all of the items involved in the first agreement, the first agreement's arbitration provision remained enforceable. See *Simmons Co. v. Deutsche Financial Servs. Corp.*, 243 Ga. App. 85, 90 (2) (532 SE2d 436) (2000) ("since all of the issues in the underlying suit were compelled to arbitration, there was nothing left for the trial court to resolve . . ."). The trial court therefore erred when it denied Dawon's motions to compel arbitration and to dismiss the complaint.

*Judgment reversed. Markle and Hodges, JJ., concur.*